565 So.2d 1288 (1988)
Jessie James LIVINGSTON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 68323.
Supreme Court of Florida.
March 10, 1988.
Rehearing Denied September 6, 1990.
*1289 Michael E. Allen, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Norma J. Mungenast, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Jessie Livingston appeals his conviction of, among other things, first-degree murder and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions but vacate his death sentence and direct the trial court to sentence Livingston to life imprisonment with no possibility of parole for twenty-five years.
Livingston broke into a house around noon on February 18, 1985 and stole two cameras, a .38 caliber pistol, and some jewelry. About 8:00 that evening he entered a convenience store/gas station, shot the female attendant twice, fired one shot at another woman inside the store, and carried off the cash register. Livingston then went to the home of an acquaintance, Terry Baker, to get help with opening the register. The authorities were called, and the police arrested Livingston at the Baker residence.
When arrested, Livingston was wearing jewelry taken in the afternoon burglary. He confessed to that burglary as well as the armed robbery and shooting and told the police where to find the cash register and the pistol. The police then found these items where Livingston said he had put them. Technical examination showed his fingerprints on both the register and the pistol.
The state charged Livingston by information with burglary and grand theft. When the shooting victim died six weeks later, the state indicted Livingston for first-degree murder, attempted first-degree murder, armed robbery, and displaying a weapon during a robbery. On the state's motion *1290 the trial court consolidated all charges for trial. The jury convicted Livingston as charged and recommended death for the homicide conviction. The trial court agreed and imposed the death sentence.
Livingston's counsel objected to the consolidation, and, as his first point on appeal, Livingston claims that the trial court committed reversible error by consolidating all of the charges against him. We disagree.
Florida Rule of Criminal Procedure 3.151(b) provides that related offenses can be consolidated on a timely motion by either side. Offenses are related "if they are triable in the same court and are based on the same act or transaction or on two or more connected acts or transactions." Fla. R.Crim.P. 3.151(a). Relevant considerations for consolidation include the expense, efficiency, convenience, and judicial economy incident to having one trial as opposed to two. See State v. Vazquez, 419 So.2d 1088 (Fla. 1982); Crum v. State, 398 So.2d 810 (Fla. 1981). Prejudice to a defendant, however, will outweigh these considerations. Vazquez; Crum.
Livingston argues that the instant crimes did not arise from the same act or transaction or from two connected acts or transactions. He claims that only the pistol, stolen during the burglary and used during the armed robbery/murder, connects the charges against him. Therefore, according to Livingston, trying the charges together did nothing but demonstrate his criminal propensity.
Paul v. State, 385 So.2d 1371 (Fla. 1980), reflects the current law on consolidation. State v. Williams, 453 So.2d 824 (Fla. 1984). In Paul we adopted Judge Smith's dissent regarding consolidation to the district court's decision in Paul v. State, 365 So.2d 1063 (Fla. 1st DCA 1979). The state charged Paul with three counts of sexual battery and attempted sexual battery for attacking one woman in a college dormitory on April 9 and for attacking two women in their dormitories on May 14 and moved for consolidation. Judge Smith dissented to approving the consolidation because "the rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are `connected' only by similar circumstances and the accused's alleged guilt in both or all instances." 365 So.2d at 1065-66.
Paul dealt with similar fact evidence, attacks on three women in their college dormitories. Judge Smith objected to consolidation of the first incident with the last two because the similarities did not warrant introducing evidence of the first attack into consideration of the others and vice versa. Id. at 1066. This case is factually distinguishable from Paul. See Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984).
The crimes charged against Livingston are dissimilar (burglary and grand theft as opposed to armed robbery and murder). They are, however, connected in an episodic sense because they occurred only hours apart in the same small town and because the pistol stolen in the burglary became the instrument for effecting the armed robbery and murder. See King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); Green v. State, 408 So.2d 1086 (Fla. 4th DCA 1982). Granting consolidation is within the trial court's discretion. Ashley v. State, 265 So.2d 685 (Fla. 1972). We find no abuse of discretion in this case.
Even if we found that the court erred in granting the consolidation, we would not find that error to warrant reversal. In United States v. Lane, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), the Court held that the harmless error rule should be applied to misjoinders and that reversal is required only if misjoinder causes actual prejudice by having a damaging effect or influence on the jury's verdict. In view of the overwhelming evidence of Lane's guilt the Court found any error harmless. We find the same in the instant case.
The evidence against Livingston was overwhelming: he confessed to both the burglary and robbery/murder; he told *1291 friends he needed money and showed them the stolen pistol; when arrested, he was wearing the stolen jewelry; his fingerprints were found on the murder weapon; he made admissions to Baker; eyewitnesses identified him. Livingston has not demonstrated how consolidation caused him any prejudice. Therefore, if the court committed any error on this point, it was harmless beyond any reasonable doubt. See Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); King; Green.
These crimes occurred in February 1985, and the trial took place in September 1985. Shortly before trial the police arrested Terry Baker, a witness against Livingston, for an unrelated crime. At the time of trial Baker had not been formally charged. In cross-examining Baker defense counsel asked if Baker had ever been convicted of a crime; Baker responded that he had been convicted a couple of times for fighting and "stuff like that." Counsel then asked if the state had a case currently pending against Baker. The court sustained the state's objection to the question. Later, during the examination of a police investigator, the state asked about statements Baker made after Livingston's arrest. The court overruled Livingston's objection to this testimony as hearsay which amounted to a prior consistent statement.
On appeal Livingston argues that the court improperly limited the cross-examination of a key state witness. He also contends that the court erred in allowing the investigator's testimony, which ostensibly rebutted any allegations that Baker had recently fabricated his testimony, because Livingston had not been able to cross-examine Baker on his possible motive for testifying. Allowing the investigator to testify to Baker's statements, Livingston now claims, improperly gave Baker's statements a "cloak of credibility."
We agree with the appellant that the trial court's refusal to permit the cross-examination of Baker about his possible motive for testifying was error. However, in light of the evidence in this case we find it to be harmless error.
In Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Court held that curtailing or denying cross-examination could be harmless error if certain criteria are met. Those criteria
include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Id. at 684, 106 S.Ct. at 1438. As stated before, the evidence against Livingston was overwhelming. The combination of Livingston's confessions, the physical evidence against him, and eyewitness testimony rendered Baker's testimony less important than if Baker had been, for instance, the sole witness or if the evidence had been less concrete. This case is a far cry from cases such as Alvarez v. State, 467 So.2d 455 (Fla. 3d DCA), review denied, 476 So.2d 675 (Fla. 1985); Kelly v. State, 425 So.2d 81 (Fla. 2d DCA 1982), review denied, 434 So.2d 889 (Fla. 1983); and Russo v. State, 418 So.2d 483 (Fla. 2d DCA 1982), where limiting the cross-examination of a sole witness or a star witness constituted reversible error. Therefore, we find the error to be harmless beyond a reasonable doubt.
We likewise find no reversible error in the investigator's testifying about statements made by Baker. The transcript of the testimony about what Baker said consists only of three short paragraphs and covers less than one page. The jury had already heard Baker's testimony about the events leading to Livingston's arrest and testimony from police officers about Livingston's confessions. We see no way that this minor narrative prejudiced Livingston.
Livingston has demonstrated no reversible error in the guilt phase of his trial. The evidence is sufficient to support the jury's verdicts, and we affirm his convictions.
*1292 To support sentencing Livingston to death, the trial court found three aggravating factors: previous conviction of violent felony; committed during armed robbery; and committed to avoid or prevent arrest. Against these factors the court weighed the mitigating circumstances of Livingston's age (seventeen years) and Livingston's unfortunate home life and rearing. The court found the death sentence warranted.
Livingston now claims that the court erred in finding the murder to have been committed to avoid or prevent arrest. We agree. The trial court based this finding on Livingston's shooting the clerk, his shooting at another witness, and that witness' testimony that Livingston said, after shooting the first victim, "now I'm going to get the one in the back [of the store]." We do not find that the state established beyond a reasonable doubt that eliminating the murder victim as a witness was the dominant or only motive for her being shot. Oats v. State, 446 So.2d 90 (Fla. 1984); accord Bates v. State, 465 So.2d 490 (Fla. 1985); Rembert v. State, 445 So.2d 337 (Fla. 1984).
Striking one aggravating factor leaves only two to be weighed against the two mitigating circumstances found by the trial court. In reviewing a death sentence this Court must consider the circumstances revealed in the record in relation to other decisions and then decide if death is the appropriate penalty. Menendez v. State, 419 So.2d 312 (Fla. 1982); see, State v. Dixon, 283 So.2d 1 (Fla. 1973). The record discloses several mitigating factors which effectively outweigh the remaining valid aggravating circumstances. Livingston's childhood was marked by severe beatings by his mother's boyfriend who took great pleasure in abusing him while his mother neglected him. Livingston's youth, inexperience, and immaturity also significantly mitigate his offense. Furthermore, there is evidence that after these severe beatings Livingston's intellectual functioning can best be described as marginal. These circumstances, together with the evidence of Livingston's extensive use of cocaine and marijuana, counterbalance the effect of the factors found in aggravation. Accordingly, we find that this case does not warrant the death penalty and, therefore, vacate that sentence and direct the trial court to resentence Livingston to life imprisonment with no possibility of parole for twenty-five years.
Livingston also argues that it is cruel and unusual punishment to execute a person for a crime committed while that person was a minor. Having decided this case on other grounds, we do not reach this issue concerning the constitutionality of the death penalty. See State v. Tsavaris, 394 So.2d 418 (Fla. 1981), receded from on other grounds, Dean v. State, 478 So.2d 38 (Fla. 1985).
In addition to imposing the death penalty the trial court sentenced Livingston to two consecutive life sentences for the attempted murder and armed robbery as well as a ten-year consecutive term, a ten-year concurrent term, and two five-year concurrent terms for the other convictions. As his final point on appeal, Livingston claims that the trial court erred in departing from the recommended guidelines sentence of twenty-two to twenty-seven years for the attempted murder conviction.
The trial court listed eight reasons for departure, some of which are invalid. The score sheet lists primary offense at conviction as attempted first-degree murder with a firearm, so using a firearm (reason 3) cannot be used to depart. See Scurry v. State, 489 So.2d 25 (Fla. 1986). Threats of death against the sixty-eight-year-old attempted murder victim (reason 4) are likewise invalid for departure because a threat of death is inherent in attempted murder. See State v. Mischler, 488 So.2d 523 (Fla. 1986). An utter disregard for human life (reason 5) is not a valid reason to depart. McGouirk v. State, 493 So.2d 1016 (Fla. 1986).
On the other hand, several of the reasons for departing in this case are valid: contemporaneous conviction of an unscored capital felony (reason 1), see Hansbrough v. State, 509 So.2d 1081 (Fla. 1987); utilizing excessive force (reason 2), *1293 Hansbrough; and an escalating pattern of criminal activity (reason 8), Keys v. State, 500 So.2d 134 (Fla. 1986). As the last reasons for departure (reasons 6 and 7) the court listed Livingston's recent release from a juvenile detention facility followed by his failure to complete an alternative treatment program and the court's conclusion that the recommended "sentence is deemed inadequate for rehabilitation or deterrence and/or" Livingston "is not amenable to rehabilitation." A generalized disagreement with the sufficiency of a recommended sentence is an invalid reason for departure. Scott v. State, 508 So.2d 335 (Fla. 1987). Reasons 6 and 7, however, embodying the court's conclusions regarding the failed past rehabilitation and the improbability of future rehabilitation, appear to be valid. See Williams v. State, 504 So.2d 392 (Fla. 1987); Burch v. State, 462 So.2d 548 (Fla. 1st DCA), approved on other grounds, 476 So.2d 663 (Fla. 1985).
Livingston argues that, because the trial court relied on invalid reasons in departing from the recommended sentence, he should be resentenced within the guidelines. In Albritton v. State, 476 So.2d 158 (Fla. 1985), we held that resentencing is not required if the state can show beyond a reasonable doubt that the absence of invalid reasons would not have affected the departure sentence. Here, just prior to sentencing, the defense conceded that the circumstances of the case and Livingston's prior record "are such that the court can correctly go outside the sentencing guidelines and impose whatever sentence the court feels is just in this case." We agree with the state that not using the instant invalid reasons would not have affected the departure sentence in this case.
Therefore, we affirm Livingston's convictions, affirm his noncapital sentences, and vacate the death sentence with directions that the trial court resentence him to life imprisonment with no possibility of parole for twenty-five years.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, J., concurs in the conviction, but dissents from the sentence.