641 So.2d 1319 (1994)
Derrick Tyrone SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 76491.
Supreme Court of Florida.
June 9, 1994.
Rehearing Denied September 12, 1994.
*1320 James Marion Moorman, Public Defender and Paul C. Helm, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Derrick Tyrone Smith appeals his conviction of first-degree murder and his sentence of death for the murder of a cab driver in St. Petersburg. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
This case is an appeal of Smith's conviction on retrial for the killing of cab driver Jeffrey Songer.[1] On retrial, the jury convicted Smith of first-degree murder and recommended death by a vote of eight to four. The trial judge followed the jury's recommendation and sentenced Smith to death. We affirm both the conviction and the death sentence.
At retrial, the evidence showed that Smith and a friend, Derrick Johnson, planned a robbery. To carry out the plan, Smith called a cab from a restaurant's pay telephone at 12:28 a.m. on March 21, 1983. Smith's fingerprint was later matched with a print found on that phone. Songer picked up Smith and Johnson outside the restaurant, then reported to his dispatcher that he was taking the fares to a nearby residential area. A few minutes later, Songer called in "D-16," which was a coded distress call. The dispatcher called the police and sent another cab driver to assist Songer. The driver found Songer lying face down about seventy feet from his cab, dead of a single shot in the back.
An eyewitness testified that he recognized Smith and Johnson. The witness also testified that he saw Smith aim and fire at Songer as the driver tried to run from the cab. Although authorities never found the murder weapon, several witnesses linked Smith to a .38-caliber pistol. Smith's uncle, with whom Smith had once lived, testified that a .38-caliber pistol was missing from his home. A lead fragment found on the victim matched the lead composition of bullets Smith's uncle obtained when he bought the gun. Other witnesses testified that they saw Smith with a gun during the day before the shooting. Johnson's testimony also placed a gun in Smith's possession.
One witness, a Canadian tourist, testified that Smith robbed his wife and him in their motel room about twelve hours after Songer was killed. The robbery victim's description of Smith's gun resembled the description of the gun Smith used in the shooting; however, it was never established that the gun was the same because the weapon was never found. Smith's fingerprints were found on a suitcase in the motel room, and, after Smith's arrest, police recovered a watch that the robbery victim identified as one Smith took.
Smith did not testify at his retrial. Larry Martin, who had been in the Pinellas County Jail with Johnson, testified that Johnson told him Smith did not shoot the cab driver.
Smith raises five issues that he argues require reversal of both his conviction and death sentence.[2] We disagree.
The first issue is whether the trial court violated Smith's constitutional right to effective assistance of counsel and self-representation by failing to inquire into his letter expressing dissatisfaction with court-appointed counsel. Several months before trial *1321 Richard Sanders, Smith's court-appointed counsel, moved to withdraw because Smith wanted to present testimony that Sanders believed was false.[3] After a hearing, the trial court denied the motion. Neither the trial judge nor Sanders questioned Smith at the hearing, and Smith did not address the court.
On the same day the hearing concluded, however, Smith wrote the trial judge and asked her to "reconsider your decision to deny [Sanders'] motion to withdraw." Smith questioned Sanders' lack of experience in first-degree murder cases and wrote, "I don't want Richard Sanders representing me on this particular case." The trial judge responded by letter and told Smith that any communication with the court must be through his attorney. The record reflects that the trial judge communicated with Smith during the trial, but Smith never raised this issue again. Thus, Sanders continued to represent Smith.
Nonetheless, Smith claims the trial court committed reversible error by not conducting a hearing to determine whether there was reasonable cause to believe that Sanders was not rendering effective counsel and, if not, appointing a substitute. In addition, Smith argues that the trial court should have informed him of his right to self-representation and determined whether he knowingly and intelligently chose to waive his right to counsel. This claim is without merit.
Initially, we find the trial court was not required to conduct a hearing on Sanders' representation. Although Smith's letter raises concerns about Sanders, the letter was, in effect, a motion for rehearing. A trial court must conduct an inquiry only if a defendant questions an attorney's competence. Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). Smith expressed dissatisfaction with Sanders, but did not question his competence.
Further, Smith's letter did not contain an explicit assertion of his right to self-representation, so a Faretta[4] inquiry was not required. Raulerson v. Wainwright, 732 F.2d 803, 808 (11th Cir.), 736 F.2d 1528 (11th Cir.), cert. denied, 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984). Thus, the trial court was not obliged to inform Smith of this right and to determine whether he knowingly and intelligently chose to waive his right to counsel. We find no error on this issue.
The second issue Smith raises is whether the trial court erred in failing to conduct a Richardson[5] hearing before admitting testimony about a defense witness's prior convictions. Larry Martin testified during the guilt phase that Derrick Johnson told him Smith did not shoot the cab driver. When defense counsel asked Martin how many times he had been convicted of a crime, Martin replied, "A couple times, I think. I'm not sure." The prosecutor then requested a bench conference, where he said Martin had eight prior felony convictions and the State planned to use them for impeachment purposes.
Smith asserts that the State violated a discovery rule because it had not previously disclosed the prior convictions. He argues that the trial court was required to conduct a Richardson hearing to determine whether the violation was trivial or substantial and whether the violation affected the defendant's ability to prepare for trial. The trial court found no discovery violation.[6]
We agree that there was no discovery violation. The State is required to produce for discovery the criminal records of any witness the prosecution intends to call at trial. Yanetta v. State, 320 So.2d 23, 24 (Fla. 3d DCA 1975); Comer v. State, 318 So.2d 419, *1322 420 (Fla. 3d DCA 1975). The State has no duty, however, "to actively assist the defense in investigating the case." Hansbrough v. State, 509 So.2d 1081, 1084 (Fla. 1987); see also Medina v. State, 466 So.2d 1046, 1049 (Fla. 1985); State v. Crawford, 257 So.2d 898, 900 (Fla. 1972). This Court held that
[t]he defense has the initial burden of trying to discover impeachment evidence, and the state is not required to prepare the defense's case. This is especially true when the evidence is as accessible to the defense as to the state.
Hansbrough, 509 So.2d at 1084 (citation omitted).
There was no assertion here that the records were not available. Thus, the trial court correctly determined that no discovery violation occurred. Even if the trial court erred, the error would have been harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986).
Third, Smith claims the trial court erred by admitting, over his objection, evidence that he committed an armed robbery about twelve hours after the homicide. Evidence of other crimes is admissible if it is relevant. Bryan v. State, 533 So.2d 744, 746 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). The evidence revealed that Smith robbed a Canadian couple at gunpoint in their motel room. At trial the man's description of the gun was similar to the description of the gun used to kill Songer. Smith argues that the robbery was not relevant to any material fact in issue and that it shows only a propensity to commit robbery.
To the contrary, evidence of the robbery was relevant to proving Smith's motive to obtain money and to proving that he possessed the same gun in both offenses. The trial court instructed the jury to consider the evidence only insofar as it was relevant to show motive and possession of the gun. These were material facts in issue, and it was not error to admit testimony about the robbery.
Smith argues as his fourth issue that the trial court violated his constitutional rights by limiting cross-examination of a State witness. Melvin Jones, one of two eyewitnesses to the Songer murder, testified that he saw Smith shoot the cab driver. He further acknowledged that he had twenty-four prior felonies. On cross-examination, Jones testified that after he was arrested on outstanding warrants for various offenses, he wrote to the State Attorney and the Public Defender about who shot the cab driver. Jones testified that he did not receive a deal for his testimony, but that the prosecutor testified for him at sentencing. Jones said he did not think the prosecutor's testimony had helped very much. The record reveals that defense counsel had adequate opportunity to cross-examine Jones about the prosecutor's testifying for him.
Smith's attorney also tried to cross-examine Jones about his testimony in another murder case. Upon objection by the State, the trial court directed defense counsel to proffer the testimony he sought to introduce. On the proffer, Jones testified that he was a State witness in the trial of Clinton Jackson for the robbery and murder of a hardware store owner. Jones and Jackson were working together when Jackson told him he was going to rob the store. Jones also saw Jackson go toward the store and then come away from it at the time of the shooting. Jones testified that he could not remember if he had any charges or violations of probation pending when he testified against Jackson, but that it was possible. After Jackson's conviction was reversed on appeal, Jones refused to respond to a subpoena to testify at Jackson's retrial. Jones testified that he did not know whether there were any pending charges or warrants against him at that time.
It is clear from the proffer that testimony about the Jackson trial was not relevant to Smith's trial. The trial court correctly sustained objection to the testimony. The record also clearly reflects that defense counsel had adequate opportunity and did cross-examine Jones about any negotiations with the State as to his testimony in Smith's trial. The trial court did not err. In any case, any error would have been harmless beyond a reasonable doubt. DiGuilio, 491 So.2d at 1139.
*1323 Lastly, we must consider whether the death sentence is disproportionate in this case. Smith urges that the death penalty is disproportionate in this case because the trial court found only two statutory aggravating circumstances: (1) the murder was committed while Smith was attempting to commit a robbery and (2) Smith had a previous conviction for a violent felony. The trial court found one statutory mitigating circumstance of no significant history of criminal activity because Smith's prior offenses were nonviolent. The court also found several nonstatutory mitigating circumstances relating to Smith's background, character, and record.
Smith compares his case to Livingston v. State, 565 So.2d 1288 (Fla. 1988), where this Court reversed a death sentence with similar aggravating circumstances and one mitigating circumstance. We find that Livingston is distinguishable from the present case and is not persuasive. In Livingston, the aggravating circumstances were the same, but the mitigating circumstances were significantly different. There the court found that the defendant's youth, inexperience, and immaturity significantly mitigated his offense. Id. at 1292. Also, Livingston had been subjected to severe beatings and neglect, after which his intellectual functioning could "best be described as marginal." Id. Here, the statutory mitigating factor was that the prior criminal record of Smith had been for nonviolent offenses. The trial court also found that Smith, who was twenty years old at the time of the offense, was a mature young man. There is no evidence in the record to suggest he was subjected to the beatings and neglect that characterized the defendant in Livingston.
In addition, Smith cites four cases to support his argument that the aggravating circumstance of a murder committed during the course of a violent felony is outweighed by a defendant's lack of any significant history of prior criminal activity, especially when there are other nonstatutory mitigating circumstances. See McKinney v. State, 579 So.2d 80, 85 (Fla. 1991); Lloyd v. State, 524 So.2d 396, 403 (Fla. 1988); Proffitt v. State, 510 So.2d 896, 898 (Fla. 1987); Caruthers v. State, 465 So.2d 496, 499 (Fla. 1985). This contention is without merit. In those cases, this Court found only one aggravating factor. Here, there are two statutory aggravating circumstances. Under the circumstances of this case, the sentence of death is not disproportionate.
We affirm Smith's conviction and death sentence.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] This Court reversed Smith's conviction and sentence at his initial trial because (1) the State elicited an improper comment on Smith's exercise of his right to remain silent and (2) the trial court admitted a statement Smith made to a detective after exercising his right to remain silent. Smith v. State, 492 So.2d 1063, 1065, 1066 (Fla. 1986).
[2] (1) Whether the trial court violated Smith's right to effective assistance of counsel and self-representation; (2) whether the trial court erred by failing to conduct an adequate Richardson inquiry when defense counsel objected to the State's violation of the discovery rule; (3) whether the trial court erred by admitting evidence of an unrelated robbery; (4) whether the trial court violated Smith's right to confront and cross-examine witnesses against him when it allowed the State to conceal the terms of a witness's prior sentencing agreement with the State; and (5) whether the death sentence is disproportionate as applied in this case.
[3] Sanders was appointed to represent Smith after two other defense lawyers, who served as co-counsel, asked to be discharged because of "irreconcilable differences" with Smith. The trial court granted the motion, then appointed Sanders.
[4] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[5] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[6] Nonetheless, the trial court held a brief Richardson hearing and found that even if there was a discovery violation there was no prejudice.