931 So.2d 790 (2006)
Derrick Tyrone SMITH, Appellant,
v.
STATE of Florida, Appellee.
Derrick Tyrone Smith, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC03-454 & SC05-100.
Supreme Court of Florida.
March 9, 2006.
Rehearing Denied June 8, 2006.
*794 Martin J. McClain of McClain and McDermott, P.A., Wilton Manors, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Katherine V. Blanco, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Derrick Smith, a prisoner sentenced to death, appeals orders of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. As explained below, we affirm the circuit court's denial of relief and deny Smith's petition.

*795 I. HISTORY OF THE CASE
In November 1983, Smith was tried, found guilty, and sentenced to death for the March 1983 murder of cab driver Jeffrey Songer. In brief, Smith and his codefendant Derrick Johnson called a cab with the intent to rob the driver. After the driver took them to the provided address and stopped the cab, all three exited the vehicle. When Songer tried to flee, Smith fatally shot him.
In Smith v. State, 492 So.2d 1063, 1067 (Fla.1986), we reversed Smith's conviction and sentence of death, remanding the case for a new trial. Upon retrial in May 1990, a jury again convicted him of capital murder, and the court sentenced him to death. On direct appeal, we affirmed. Smith v. State, 641 So.2d 1319 (Fla.1994), cert. denied, 513 U.S. 1163, 115 S.Ct. 1129, 130 L.Ed.2d 1091 (1995).[1]
Subsequently, Smith filed in circuit court an amended motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, in which he raised numerous claims.[2] After a Huff[3] hearing, the circuit court issued an order denying claims on which an evidentiary hearing was not ordered. After the evidentiary *796 hearing, the court denied all remaining claims.
Smith appeals. He also has filed a petition for writ of habeas corpus. We first address the issues raised on appeal and then the claims urged in the habeas petition.

II. THE ISSUES ON APPEAL
Smith raises five claims in this appeal: (A) that the State withheld material and exculpatory evidence and knowingly presented false or misleading evidence; (B) that the circuit court erred in limiting the scope of the postconviction evidentiary hearing; (C) that trial counsel provided ineffective assistance during the guilt phase of trial; (D) that newly discovered evidence proves Smith's innocence; and (E) that trial counsel provided ineffective assistance during the penalty phase of trial. Several of these issues contain subclaims. We discuss each issue in turn below and affirm the circuit court's denial of relief as to all of them.

A. The Brady and Giglio Claims
Smith contends that the State violated Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that the state's failure to provide defendant with favorable, material evidence violates due process), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (holding that a defendant's due process right is violated when the State knowingly allows false, material testimony to be presented at trial). We will address each alleged violation in turn.

1. Failure to Disclose
Smith alleges the State violated Brady by failing to disclose favorable information contained in State documents related to the murder investigation. "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).
To establish prejudice, the defendant must demonstrate that the suppressed evidence is material. The test for materiality is whether there exists a reasonable probability that the jury verdict would have been different had the suppressed information been used at trial. Id. at 289, 296, 119 S.Ct. 1936. In other words, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 290, 119 S.Ct. 1936 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).
In this case, the circuit court was correct to deny relief on Smith's Brady claims. As we explain below, even those documents that meet the first two prongs of Strickler are not material; thus, the State's failure to disclose them does not violate Brady.

a. Undisclosed Contact between Codefendant Johnson and Witness Jones
Smith argues that the circuit court erred in determining that a document showing that Melvin Jones, an eyewitness to the murder, and Derrick Johnson, Smith's codefendant, met in jail was not material under Strickler. Smith claims the document demonstrates that Jones and Johnson collaborated before trial to implicate Smith as the shooter.
At retrial, Jones testified that as he walked home that evening, he witnessed the murder, and he identified Smith as the *797 killer. Jones and his wife lived within a block of the murder scene, and both testified that within a short time after the murder, Jones arrived home and told her he had witnessed it. The previously undisclosed internal report shows that in September 1983, the prosecutor requested an investigation into whether Jones and Smith had any contact in jail.[4] The prosecutor's handwritten note reflected that the two were "never together" and that Johnson first saw Jones on July 11 in a holding cell before a preliminary hearing. At that time, Jones showed Johnson a map of the crime scene and said that he or it would help Johnson at trial.
After an evidentiary hearing, the circuit court determined, and in fact the State conceded, that the first two prongs of the Strickler test were met. That is, the State failed to disclose this evidence that could have been used for impeachment. The court, however, determined that Smith failed to show that this evidence casts the trial in such a different light as to undermine confidence in the verdict. We agree.
At most, Johnson's statement acknowledging contact was of limited value to support a theory of collusion between Johnson and Jones. First, the evidence from the evidentiary hearing and trial demonstrated that Johnson and Jones did not know each other before the murder and did not discuss the facts of the case during their brief meeting. In fact, Johnson was so unnerved by the encounter with this stranger that he asked to be removed from the cell. Further, the State did not provide Jones with a deal in exchange for his testimony. In addition, at retrial, the defense challenged Jones's credibility in light of his felony convictions and his efforts to make a deal in exchange for his testimony.
Smith's theory of defense was that he was not in the cab that night and that Jones and Johnson were lying. The evidence at retrial, however, showed that on the day of the murder, Smith tried to sell a gun to Carolyn Mathis and later that evening told Regina Mathis that he was going to "hustle" some money because he had none. Before going out on the night of the murder, Smith showed a gun to his friend James Matthews, who in turn showed it to his live-in girlfriend, Priscilla Walker. Smith told Matthews he was going out to get some money that evening. Later that evening, Smith was at a nightclub, where Ernest Rouse saw him place a revolver under a turntable in the disc jockey booth and later retrieve it. Jones and Johnson saw the handgun and saw Smith fire the fatal shot.
After the murder, in the early morning hours, Smith returned to his friends' home and admitted to both Matthews and Walker that he had shot someone. To Walker, he said that he shot a cab driver who would not give him any money. He told Matthews he was scared and needed a place to stay. Within twelve hours after the murder, Smith robbed two Canadian tourists, using a handgun. Finally, Smith's uncle testified that his revolver was missing. The descriptions of the gun Smith had immediately preceding, during, and after the murder matched his uncle's gun, which was missing. In addition, a bullet from the victim was consistent with the bullets from Smith's uncle's ten-year-old box of bullets.
Finally, Smith made a call from a restaurant telephone, and his fingerprint was found on the phone. A request for a cab was made on that phone at 12:28 a.m. on *798 March 21, 1983, and Smith and Johnson were seen entering the cab that arrived shortly thereafter. Accordingly, the undisclosed evidence of a brief jail contact does not meet the materiality prong of Brady.

b. Undisclosed Police Reports
Smith argues that the State violated Brady by failing to disclose information in police reports and other documents and that the failure to disclose them undermines confidence in the outcome of the trial. Smith first alleges error regarding the State's failure to disclose that Jones initially was listed as a suspect in the murder. The evidence showed that Jones was so listed shortly after the murder because he lived within a block of the crime scene and had outstanding warrants for his arrest. We find that the evidence is neither exculpatory nor impeaching. See Wright v. State, 857 So.2d 861, 870 (Fla.2003) (rejecting claim that "information contained in police files concerning other possible suspects and other criminal activity in the same neighborhood" was Brady material that had to be disclosed), cert. denied, 541 U.S. 961, 124 S.Ct. 1715, 158 L.Ed.2d 402 (2004); Carroll v. State, 815 So.2d 601, 620 (Fla.2002) ("As noted by the State, the prosecution is not required to provide the defendant all information regarding its investigatory work on a particular case regardless of its relevancy or materiality."). Further, even if it should have been disclosed, it was not material under the Strickler. The bases for Jones's early listing as a "possible suspect" were known to Smith, and the jury was informed of them as well. Failure to disclose this information does not undermine confidence in the outcome of the trial.
Smith next argues that the State failed to disclose a police report demonstrating the police contacted Jones's wife, Mellow Jones, in their house-to-house canvassing of the neighborhood both immediately after the murder and a few hours later, with negative results each time. He alleges that the report constituted valuable impeachment evidence. This claim was not raised below and thus is not preserved for our review. In his postconviction motion, Smith claimed generally that counsel was ineffective for failing to impeach Mrs. Jones with police reports. He did not claim the documents were not disclosed or allege facts contained in them that would serve as impeachment. The circuit court was correct to summarily dismiss this conclusory claim.
Although Smith's newly formulated claim is not preserved, we point out that the police report is neither exculpatory nor impeaching. Contrary to Smith's claim, the report does not contradict the testimony of either Mr. or Mrs. Jones.
In his third subclaim regarding nondisclosure, Smith argues that the State failed to disclose a handwritten note of August 9, 1989, (after the first trial but before the retrial) on which he was entitled to question Jones at trial. Written by a prosecutor in the first trial, the note indicates that Jones telephoned her, saying that to prevent him from reuniting with his wife, his daughter had recently falsely accused him of sexually abusing her several years before. He feared arrest and wanted to take a polygraph and have his daughter take one as well. We agree with the circuit court's denial of this claim. See Carroll, 815 So.2d at 620 (stating that "prosecution is not required to provide the defendant all information regarding its investigatory work on a particular case regardless of its relevancy or materiality"). The note does not provide exculpatory evidence or impeachment material. The note was not relevant either to the retrial or to Jones's motivation to provide testimony.
*799 Next, Smith asserts that the circuit court erred in determining that a prosecutor's internal investigation synopsis dated April 4, 1983, did not have to be disclosed and was not material under Strickler. In the document, the prosecutor summarized the testimony of David McGruder, a restaurant employee who saw Smith make a phone call and get in the cab. The prosecutor noted that McGruder was unable to pick Smith out of a photopack. We find that the State should have disclosed the document, but hold this evidence was not material. See Young v. State, 739 So.2d 553, 560 (Fla.1999) (holding that information in state attorney's notes of witness interviews constituted evidence favorable to defense subject to disclosure but was not material to Young's murder conviction).
When the prosecutor dictated his synopsis, the police had not yet shown McGruder a photopack actually containing Smith's picture. McGruder did not identify Smith's picture until April 8. That was the first photopack that included Smith's picture. Further, at retrial Smith impeached McGruder on his tardy photopack identification, and the jury heard McGruder's confusing testimony regarding his uncertain identification of the photo.
Finally, Smith argues that the State did not disclose a police report about Jones's polygraph test, which Smith could have used to impeach Jones at trial.[5] The circuit court found that Smith did not rebut the State's evidence that such a report was disclosed and further did not demonstrate that polygraph tests were admissible at trial as impeachment evidence. See Sochor v. State, 883 So.2d 766, 787 (Fla. 2004) ("As for the polygraph tests, their results would not have been admissible at trial without the consent of both parties."); Walsh v. State, 418 So.2d 1000, 1002 (Fla. 1982). We agree with the circuit court that Smith failed to establish materiality.

2. Intentional Deception
Smith next claims that in several instances the State intentionally deceived or misled the defendant and the trier of fact in violation of Giglio, 405 U.S. at 150, 92 S.Ct. 763. "To establish a Giglio violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." Guzman v. State, 868 So.2d 498, 505 (Fla.2003). The third prong of the test is not identical to the materiality prong of the Strickler test for a Brady violation. Instead, on the issue of materiality or prejudice, the question is whether there is any reasonable likelihood that the false testimony could have affected the jury's verdict. In other words, the State has the burden to demonstrate that the false testimony was harmless beyond a reasonable doubt.
Smith argues that the prosecutor's investigatory notes indicating that codefendant Johnson and eyewitness Jones once encountered each other in a holding cell demonstrates that Jones and Johnson gave false testimony and that the State knew this and failed to correct it. Smith alleges, however, that Jones gave the perjurious testimony in his deposition taken before the first trial and that both Jones and Johnson testified falsely at the first trial. At retrial, however, neither Jones nor Johnson was questioned about even the possibility that they colluded on their testimony. Smith has thus failed to show that any of the retrial testimony was false and *800 that the State failed to correct it. Accordingly, Smith's Giglio claim is unsubstantiated and we affirm the trial court's denial of relief.
In his second Giglio claim, Smith urges that the State allowed Jones to testify falsely at retrial regarding the deal Jones made with the State in exchange for his testimony and how much time he served as part of the deal. First, as the circuit court correctly found, the claim was insufficiently pled. Second, it is refuted by the record. There is no evidence that the State gave Jones a deal regarding his unrelated felony charges to obtain his trial testimony, and Smith has not shown any of Jones's testimony to be false. Smith thus failed to establish the elements of a Giglio claim.
Finally, Smith alleges that the circuit court failed to give cumulative consideration to his Giglio claims. As explained above, Smith failed to demonstrate that any false or misleading testimony was given at retrial. We find no error in the court's cumulative error analysis.

B. The Scope of the Evidentiary Hearing
In his second issue on appeal, Smith contends that at the evidentiary hearing, the circuit court improperly precluded him from presenting "some evidence" on some of his Brady and Giglio claims and thus was unable to conduct a cumulative analysis. This claim fails for two reasons. First, Smith's contention is vague and conclusory. In his initial brief, Smith does not identify any evidence that was improperly excluded. Nor does he specify any claim that the court wrongfully excluded from the evidentiary hearing. Second, Smith fails to demonstrate that the circuit court erred in requiring the evidence admitted at the evidentiary hearing to be related to the issues before it. The circuit court summarily denied several of Smith's postconviction claims and ordered an evidentiary hearing on others. Later, the court expanded the number of claims set for hearing. During the hearing, the court did not allow Smith to argue or present evidence regarding previously denied claims. Smith has not demonstrated this to be error. Accordingly, we deny relief on this issue.

C. Ineffective Assistance of Counsel in the Guilt Phase
Smith's third issue on appeal presents several claims that defense counsel provided ineffective assistance during the guilt phase of his trial. To establish that counsel was ineffective, a defendant must cite specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must establish prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. Claims of ineffective assistance of counsel present mixed questions of law and fact subject to plenary review. Occhicone v. State, 768 So.2d 1037, 1045 (Fla.2000). This Court independently reviews the trial court's legal conclusions and defers to the trial court's findings of fact. We address below each of Smith's ineffective assistance claims.

1. Undiscovered Witness
Smith argues that the circuit court erred in determining that he was not prejudiced by trial counsel's failure to locate witness Vincent Gibson, also referred *801 to as Ventura Gibson. He claims that Gibson's testimony would have proven Jones's eyewitness testimony was false. Jones had told police that Gibson dropped him off near his home that night, and Jones then witnessed the murder as he walked home. At the postconviction evidentiary hearing, Gibson testified that he did not remember taking Jones home, that he did not take Jones home, and that he would not have taken Jones home that late at night. Based on this testimony, the circuit court found that Smith met the first prong of Strickland, but not the second. We hold that Smith failed to meet either prong of the standard.
Gibson's testimony does not prove Jones was not an eyewitness to the murder. At best, his testimony calls into question Jones's statement of how he arrived at the crime scenea minor, collateral issue. The fact that Jones lived within a block of the crime scene explains his presence there. Accordingly, counsel's failure to interview Gibson on this collateral matter does not constitute a serious error under Strickland.
Further, Smith failed to establish prejudice. Using Gibson's equivocal testimony to impeach Jones on how he got to the crime scene would be of little value. Jones told his wife that he had witnessed a murder when he arrived home shortly after the murder occurred. In fact, because of the proximity of Jones's home to the crime scene, the police conducting a neighborhood canvass for information came to Jones's house shortly after the murder. Further, Jones's eyewitness testimony was not the only evidence placing Smith at the crime scene with a gun. In fact, Smith admitted having shot the cab driver to friends within hours of committing the crime. Accordingly, our confidence in the verdict is not undermined.

2. Bullet Lead Analysis
Next, Smith alleges that counsel was ineffective for failing to challenge an FBI expert's testimony regarding bullet lead compositional analysis and that counsel was unprepared because he did not obtain his own expert.[6] We hold that the trial court correctly denied relief.
The evidence presented at the evidentiary hearing amply demonstrated that Smith's trial counsel hired an expert to examine the scientific evidence in question and to challenge it. The expert, however, found no problems with the FBI analysis. In addition, defense counsel himself researched the FBI's scientific methodology. Finally, Smith's expert admitted at the postconviction hearing that no research, including his own, was available to challenge the FBI evidence at the time of retrial. Accordingly, Smith failed to meet the first prong of the Strickland standard.

3. Miscellaneous Ineffectiveness Claims
Smith makes several unrelated ineffectiveness claims. Smith alleges that counsel was ineffective for failing to strike unnamed jurors for expressing bias in favor of imposing death upon conviction for first-degree murder and for failing to object to improper comments made by the State in its closing arguments. We affirm denial of these conclusory claims. Smith has presented neither facts nor argument to support the statements.
Smith also alleges that defense counsel failed to adequately investigate two potential alibi witnesses, Smith's friends Khan Campbell and James Hawkins, and did not *802 call these witnesses based solely on a "feeling" that they would commit perjury. This argument was not raised below and is therefore not preserved for appellate review.
In his postconviction motion, Smith alleged the different claim that counsel was ineffective because he was "laboring under a conflict of interest when he refused to present alibi witnesses at trial." The circuit court denied the claim, holding that the issue could and should have been raised on direct appeal. The court further held that the evidence demonstrated counsel's decision not to call the witnesses was strategic in nature and that counsel acted pursuant to a court ruling. We agree. Our review of the record reveals that the issue was thoroughly developed at retrial and therefore could have been raised on direct appeal. Further, competent, substantial evidence supports the circuit court's determination that counsel's decision not to call Campbell and Hawkins was both strategic and pursuant to court order. The retrial court determined that under rule 4-3.3 of the Rules Regulating the Florida Bar counsel could not call these two witnesses.
Finally, Smith has failed to demonstrate any error. Accordingly, his claim of cumulative error merits no relief.

D. The Newly Discovered Evidence Claim
In his next issue, Smith contends that the circuit court erred in denying his claim that newly discovered impeachment evidence establishes his innocence and he is entitled to a new trial. For a conviction to be set aside based on a claim of newly discovered evidence, two requirements must be met. First, to qualify as newly discovered, the evidence must not have been known at the time of trial by the court, the party, or counsel, and "it must appear that the defendant or his counsel could not have known [of it] by the use of diligence." Jones v. State, 591 So.2d 911, 916 (Fla. 1991) (quoting Hallman v. State, 371 So.2d 482, 485 (Fla.1979)). Second, the nature of the evidence must be such that on retrial it would probably produce an acquittal. Id. at 915.
Smith alleged in his postconviction motion that in 2000ten years after his retrialhis counsel discovered Charles Hill, who would testify that Johnson, Smith's codefendant, admitted killing the cab driver. At the evidentiary hearing, Hill testified that two years after the first trial, he and Johnson were twice in the same prison. On both occasions, Johnson confessed that he, not Smith, was the triggerman. Hill also testified that he and appellant Smith had been friends since before the 1983 murder, that they shared a longtime group of friends, that he repeatedly visited Smith in the Pinellas County jail over the years preceding the postconviction hearing, and that he was an intermediary between Smith and the mother of Smith's child.
The circuit court denied relief, finding that (a) Smith failed to show Hill's testimony could not have been discovered earlier through due diligence, (b) Hill's testimony was "unworthy of belief," (c) Hill never explained why he waited until he was contacted by postconviction counsel fifteen years later to report the confession, (d) Johnson testified at the evidentiary hearing that he never came into contact with Hill in 1985 and never claimed to be the killer, and (e) the evidence showed that Hill and Johnson were at the same correctional facility for about five hours on one occasion and less than a day on the other, and this evidence contradicted Hill's testimony that they were together for a week on each occasion. Finally, the court determined that even if Hill were credible, Hill's *803 testimony was insufficient to probably produce an acquittal.
Each of the court's factual findings is supported by the record. In addition, the court found Hill's testimony not credible. This Court does not substitute its judgment for that of the trial court on issues of fact when competent, substantial evidence supports the circuit court's factual findings or on issues of witness credibility. Windom v. State, 886 So.2d 915, 921 (Fla.2004) ("So long as its decisions are supported by competent, substantial evidence, this Court will not substitute its judgment for that of the trial court on questions of fact and, likewise, on the credibility of the witnesses and the weight to be given to the evidence by the trial court."). Accordingly, we affirm the circuit court's denial of Smith's newly discovered evidence claim.

E. Ineffective Assistance in the Penalty Phase
The trial court sentenced Smith to death after finding two aggravating factors (murder committed while attempting robbery and prior violent felony conviction) and one statutory mitigator (no significant criminal history). During the penalty phase, defense counsel presented the testimony of Smith's relatives,[7] two ministers, Smith's defense counsel, and Smith himself. Based on this testimony, the trial court also found nonstatutory mitigation regarding Smith's record, background, and character.
In his last appellate issue Smith argues that the circuit court was wrong to deny his claim that defense counsel provided constitutionally ineffective assistance by failing adequately to investigate, prepare, and present available mitigating evidence during the penalty phase of trial. As explained above, to obtain relief on an ineffective assistance claim, a defendant must establish a serious, professional error or omission of counsel and demonstrate that as a result of the error, confidence in the result is undermined. See Strickland, 466 U.S. at 687, 694, 104 S.Ct. 2052.
After the evidentiary hearing, the circuit court denied relief, finding that neither prong of Strickland was satisfied and concluding that much of Smith's proffered mitigation was cumulative or, if presented, would have carried little weight. Further, counsel made a tactical decision not to present the remaining evidence.
On appeal, Smith alleges that the first prong of Strickland is met by defense counsel's testimony at the postconviction hearing that he did not know what he would have found, but he felt he "should have looked harder." Counsel's statement alone, however, is insufficient to establish constitutionally deficient representation. See Mills v. State, 603 So.2d 482, 485 (Fla.1992) (emphasizing that reasonableness is the standard for determining counsel's competence and counsel's statement that she should have investigated an issue was not persuasive); see also Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Smith has thus failed to meet the first prong of Strickland by failing to identify an error, much less a serious error committed by counsel.
*804 Smith contends that if certain facts about his childhood and background had been presented in the penalty phase, the aggravating factors would have been "knocked out." He lists facts such as living in poverty before his mother's death, his difficulty adjusting to life with his aunt afterwards, and his drug habit. The record shows, however, that witnesses, including Smith, testified on each of these subjects; thus, any additional evidence would have been cumulative. Other facts not presented, such as Smith's recent breakup with his girlfriend at the time of the murder, would have carried little, if any, weight. Finally, defense counsel testified that he specifically decided not to use the negative report of his mental health expert because it contradicted his strategy for presenting a positive picture of Smith. This was a strategic decision. See Occhicone, 768 So.2d at 1048 ("Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions.... Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."); see also Haliburton v. Singletary, 691 So.2d 466, 471 (Fla.1997) (determining that counsel, whose strategy was to humanize defendant to jury, was not ineffective for not calling expert witness to testify to defendant's possible brain damage because expert also would testify defendant was extremely dangerous and would kill again). We agree with the circuit court that neither prong of the Strickland standard was met. Accordingly, we affirm the denial of relief on this issue.

III. THE HABEAS PETITION
Smith has filed a petition for writ of habeas corpus in which he presents the following four issues: (1) whether this Court's disposition of Smith's direct appeal rests upon an error of fact; (2) whether the State failed to disclose pertinent facts regarding Smith's direct appeal; (3) whether appellate counsel was ineffective for failing to raise meritorious issues; and (4) whether Florida's capital sentencing procedure violates Ring, 536 U.S. at 584, 122 S.Ct. 2428. We address each in turn below.

A. Error of Fact/Ineffective Assistance
On direct appeal from Smith's conviction and sentence, this Court addressed Smith's claim that the trial court violated Smith's constitutional right to effective assistance of counsel by failing to inquire into Smith's November 6, 1989, letter in which he expressed dissatisfaction with court-appointed counsel. Smith, 641 So.2d at 1320. We held that the trial court was not required to conduct a hearing because our examination of the letter revealed that Smith had not questioned the competence of defense counsel's representation. Id. at 1321 (citing Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988)).
In his petition, Smith now argues that in a prior letter to the retrial court he did question counsel's competence. He notes that the November 1989 letter referred to a prior letter and has attached what he claims is that letter. He alleges that the prior letter was misfiled in another case pending against him at the time of retrial and that postconviction counsel located it in a district court appellate record. Smith further alleges that the newly found letter demonstrates that the appellate record was incomplete and thus this Court's decision was based on an error of fact. This is incorrect. Our prior decision was based on the letter that was of record. Any claim regarding this newly discovered letter is separate from the issue of the November 1989 letter and has no effect on our holding regarding it.
*805 Alternatively, Smith contends that appellate counsel was ineffective for failing to locate this letter and raise a claim regarding it on appeal. The requirements for establishing a claim based on ineffective assistance of appellate counsel parallel the standards announced in Strickland. The "[p]etitioner must show 1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and 2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result." Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985). Under this standard, counsel cannot ordinarily be considered ineffective for failing to raise issues that are procedurally barred because they were not properly raised during the trial court proceedings. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). Moreover, appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims on appeal. See id.
Assuming, without deciding, that this letter is genuine and was misfiled as Smith alleges, we deny the claim. Our review of the letter reveals that Smith's statements can best be characterized as generalized complaints that are simply insufficient to warrant any inquiry. See Logan v. State, 846 So.2d 472, 477 (Fla.2003) (holding hearing unnecessary "where the defendant merely expresses dissatisfaction with his attorney"). Because the issue lacks merit, appellate counsel was not ineffective for failing to raise it in the direct appeal. In addition, appellate counsel has no duty to go beyond the record on appeal. See Rutherford, 774 So.2d at 646 ("Appellate counsel cannot be deemed ineffective for failing to investigate and present facts in order to support an issue on appeal. The appellate record is limited to the record presented to the trial court.").

B. Failure to Disclose
In his second issue, Smith alleges that he was deprived of due process in his direct appeal because of the State's failure to disclose facts pertinent to his direct appeal. These claims are procedurally barred because they were or should have been litigated on direct appeal or were or should have been brought in his 3.850 motion. See Wright, 857 So.2d at 874 (holding that habeas claims that "the State intentionally deceived this Court" regarding issues raised on direct appeal could have been presented on direct appeal or in 3.850 proceedings and "cannot be reconsidered in a petition for writ of habeas corpus"); Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992) (noting that "[h]abeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been ... or were raised on direct appeal"); see also Jones v. Moore, 794 So.2d 579, 586 (Fla.2001) ("This Court previously has made clear that habeas is not proper to argue a variant to an already decided issue.").[8] We address only one of the claims below because of Smith's alternative argument.
On appeal, we affirmed the retrial court's determination that the State's failure to inform Smith that his own witness, Larry Martin, had prior felony convictions was not a discovery violation. Smith, 641 So.2d at 1321. We noted that Smith had not claimed the records were not available *806 and stated that the State had no duty to prepare the defense's case. Id. at 1321-22. Smith alleges that the United States Supreme Court overruled this conclusion in Banks v. Dretke, 540 U.S. 668, 675-76, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), in which it stated that "[w]hen police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight." In this case, however, the State did not "conceal" Martin's prior convictions; they were a matter of public record.[9] As we noted in our opinion, Smith never contended that the information about his witness was not readily available to him. Accordingly, we deny relief on this claim.

C. Ineffective Assistance
Smith next presents three claims of ineffective assistance of appellate counsel. As stated previously, to obtain relief on such claims, Smith must establish deficient performance and resulting prejudice. Wilson, 474 So.2d at 1163.
First, Smith contends that appellate counsel failed on appeal to argue that the trial court erred by not conducting adequate Frye[10] inquiries into the scientific evidence presented by FBI witnesses. Trial counsel did not object to the testimony based on Frye, however, and appellate counsel cannot be deemed ineffective for failing to raise an unpreserved issue on appeal. See Rutherford, 774 So.2d at 643.
Also unpreserved for review is Smith's allegation that appellate counsel was ineffective for failing to raise Smith's absence from the beginning of a motion hearing and an in-chambers discussion regarding the parties' seating arrangements at trial. In addition, Smith's absence in these instances does not constitute fundamental error. See Orme v. State, 896 So.2d 725, 738 (Fla.2005) (stating that the right to be present at crucial trial stages does not confer a right to be present at every conference at which an issue relevant to the case is discussed). Accordingly, the claim fails both prongs of Strickland.
Smith next claims that appellate counsel was ineffective for not raising on appeal defense counsel's refusal to call two alibi witnesses. He further asserts that the trial court erred in refusing to allow the witnesses to testify. The record shows that at retrial, Smith requested that his counsel present Khan Campbell and James Hawkins to testify. Defense counsel immediately moved to withdraw, but the trial court denied the motion, stating that the decision to call alibi witnesses is strategic. During trial, however, the issue again arose. Counsel explained that he was ethically constrained from presenting the witnesses. Because of privileged information, he knew their testimony would be perjurious.[11] The retrial court ruled that under rule 4-3.3 of the Rules Regulating the *807 Florida Bar counsel was prohibited from calling the pair to testify. It is clear that in refusing to present the testimony, defense counsel acted pursuant to the retrial court's express ruling. Smith provides scant legal argument for his position, contending only that Smith had a due process right to present the witnesses. But Smith has no due process right to require his counsel to aid in the commission of a fraud upon the court by presenting perjurious testimony. See DeHaven v. State, 618 So.2d 337, 339 (Fla. 2d DCA 1993) (stating that defendant's constitutional right to the effective assistance of counsel does not include a right to require counsel to commit a fraud on the court). Accordingly, Smith has failed to meet either prong of Strickland.

D. Constitutionality of the Death Penalty
Smith alleges that his death sentence is unconstitutional under Ring, 536 U.S. at 584, 122 S.Ct. 2428. Smith's retrial and sentencing were held in 1990. This Court has held that Ring does not apply retroactively. Johnson v. State, 904 So.2d 400, 412 (Fla.2005) ("We therefore hold that Ring does not apply retroactively in Florida and affirm the denial of Johnson's request for collateral relief under Ring."). In addition, one of the aggravating factors in this case was prior violent felony conviction, a factor which does not require a jury finding. Jones v. State, 855 So.2d 611, 619 (Fla.2003) ("Further, we note that one of the aggravators found was that Jones had a prior violent felony conviction, a factor which under Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] and Ring need not be found by the jury."). Accordingly, Smith is not entitled to relief.

IV. CONCLUSION
For the foregoing reasons, we affirm the postconviction court's denial of relief on Smith's 3.850 motion and we deny Smith's habeas petition.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, CANTERO, and BELL, JJ., concur.
QUINCE, J., recused.
NOTES
[1] In the direct appeal following retrial, we addressed the following five issues and affirmed: (1) whether the trial court violated appellant's right to effective assistance of counsel and self-representation; (2) whether the trial court conducted an adequate inquiry into an alleged discovery violation; (3) whether the trial court erred in admitting evidence of another robbery; (4) whether the trial court violated Smith's constitutional right to confront witnesses by limiting cross-examination of a witness; and (5) whether the death sentence was disproportionate. Smith, 641 So.2d at 1320 n. 2.
[2] In summary, Smith raised the following claims: (1)-(2) trial counsel was constitutionally ineffective regarding trial preparation and cross examination, and the State withheld material exculpatory evidence, presented false testimony, and knowingly misled the court; (3) newly discovered evidence rendered Smith's conviction and sentence constitutionally unreliable; (4) the death sentence is arbitrary and capricious and violates state, federal, and international law; (5) postconviction counsel was ineffective; (6) the State's failure to provide public records violated Smith's due process and equal protection rights; (7)-(8) no reliable trial transcript exists, which denied Smith's right to direct appeal; (9) the prohibitions against interviewing jurors denied Smith the effective assistance of postconviction counsel; (10)-(15) retrial counsel was ineffective during voir dire, because of a conflict of interest, and for failing to ensure Smith's presence at critical stages of trial, to object to the State's improper arguments at trial, and to obtain an adequate psychiatric evaluation, conduct an adequate background investigation, and present available mitigation; (16) Smith's death sentence is fundamentally unfair, and trial counsel was ineffective for failing to object to the State's improper use of nonstatutory aggravating factors; (17) the judge and jury relied on misinformation of constitutional magnitude in violation of Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); (18) cumulative procedural and substantive errors deprived Smith of a fair trial; (19) section 119.19, Florida Statutes (2000), and Florida Rule of Criminal Procedure 3.852 are unconstitutional facially and as applied; (20) the penalty phase jury instructions unconstitutionally shifted to Smith the burden of proving death was inappropriate; (21) the penalty phase jury instructions unconstitutionally diluted the jury's sentencing responsibility; (22)-(23) the statutory aggravator of murder committed in the course of robbery or its attempt is an unconstitutional automatic aggravator and is unconstitutionally vague; (24) Florida's capital sentencing statute is unconstitutional on its face and as applied; (25) Smith's due process rights were violated by the denial of access to the state attorney's investigative notes; (26) Florida's capital sentencing statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (27) Smith's death sentence is invalid because the indictment did not charge the elements of the offense.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] Jones was arrested in June 1983 on bad check charges and other charges unrelated to the murder.
[5] Smith also claims on appeal that Johnson's polygraph test constituted valuable impeachment evidence. Smith did not make this claim in his postconviction motion, the circuit court did not address it, and it is not preserved.
[6] At trial, the evidence was used to link the bullets for Smith's uncle's gun with the lead fragment found on the victim.
[7] His brother and the aunt who raised him after his mother's death testified before the jury, and his sister testified in the hearing held pursuant to Spencer v. State, 615 So.2d 688 (Fla.1993).
[8] Smith alleges that the State's failure to disclose pertinent facts undermines our determination that the evidence of Smith's commission of a robbery within hours after the attempted robbery was admissible and that Smith's cross-examination of eyewitness Jones was not unconstitutionally limited.
[9] In fact, the record shows that defense counsel knew Martin had prior convictions; he just did not know how many.
[10] See Frye v. United States, 293 F. 1013, 1015 (D.C.Cir.1923) (holding that to be admissible, expert testimony must be premised on principles or techniques generally accepted in the relevant scientific field). Under Florida law, courts conduct a Frye hearing to determine whether expert scientific opinion evidence is admissible.
[11] The retrial court sealed defense counsel's written statement of the confidential information. The postconviction court opened the document in determining Smith's related claim in his 3.850 motion. Defense counsel wrote in the document that Smith had revealed to him that Campbell and Hawkins were lying.