611 So.2d 1228 (1993)
Lavarity ROBERTSON, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 74914.
Supreme Court of Florida.
January 7, 1993.
*1229 Robin H. Greene of Greene and Greene, P.A., Miami, for appellant.
*1230 Robert Butterworth, Atty. Gen. and Anita J. Gay, Asst. Atty. Gen., Janet Reno, State Atty. and Joseph S. Rosenbaum, Asst. State Atty., Miami, for appellee.
PER CURIAM.
Lavarity Robertson appeals his convictions for first-degree murder and other felonies and his resulting sentences, including a death sentence.[1] We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution. We affirm Robertson's convictions for two counts of first-degree murder, armed burglary and armed robbery. However, we vacate Robertson's two death sentences and remand the case to the trial judge to reweigh the remaining aggravating and mitigating circumstances and to resentence Robertson. We also vacate Robertson's consecutive life imprisonment sentences for armed robbery and armed burglary and remand for resentencing within the sentencing guidelines.
On November 6, 1988, Robertson, his girlfriend's thirteen-year-old brother Anthony Williams, C.J. Williams, and Gerald Griffin went fishing along the 79th Street Causeway in Miami. After fishing for a couple of hours, the foursome drove to a bait and tackle shop to buy some bait and two six-packs of beer. They then drove to the 36th Street Causeway and continued to fish. As they fished, Robertson retrieved a semiautomatic .22 caliber rifle from the trunk of the car that he was driving. The foursome then took turns shooting at objects floating in the water.
As they prepared to leave, Robertson suggested to C.J. Williams that they rob a couple sitting in a car parked on the access road beside the causeway. C.J. Williams resisted the suggestion and left in a car with Gerald Griffin. Robertson put the rifle in the front seat of the car that he was driving and left with Anthony Williams. Robertson drove past the parked car in which the couple was sitting. He then made a u-turn, pulled alongside of the couple's car and parked. He took his rifle and walked towards the couple's car. Anthony Williams saw Robertson go to the driver's side of the couple's car and heard him demand money from the driver. Anthony Williams then heard shots. The man sitting in the driver's seat slumped toward the passenger side of the car. Anthony Williams then saw a woman emerging from the passenger side of the car. Robertson went towards the woman and demanded, "Give me the rings." Anthony Williams then heard the woman crying and screaming that she did not have any money. Anthony Williams then heard more shots and he then saw the woman fall to the ground outside the car.
On returning to his car, Robertson put some rings in the ashtray and stated to Williams, "Why you ain't try to stop me?" During the drive to Williams' home, Robertson told him to remain quiet about the murders. Later that night, Robertson confided to his friend, C.J. Williams, that he had killed a man and woman on the access road beside the causeway. C.J. Williams testified that Robertson told him that he had shot the woman because she was screaming. The next day Robertson also confessed to his friend, Willie Finch, that he had shot and robbed a man and woman on the causeway. Finally, Robertson also confessed to his girlfriend, Sheekita Barron, that he had shot and robbed a driver in a car on the causeway. He gave her the rifle and rings to hide. Barron wore the rings for a couple of days and hid the rifle under her mattress and then later in a closet.
On November 7, 1988, early in the morning, a police officer discovered the victims. The victims were identified as Frank Najarro *1231 and Leticia Paguada.[2] Najarro, who was in the driver's seat, was slumped towards the passenger door. The police officer found Paguada's body face down outside the passenger door. The police officer secured the area around the vehicle and contacted the homicide division. At the scene, police officers recovered casings from a .22 caliber rifle and made photographs of the tire tracks found near the victims' car. Dr. Bruce Hyma, the forensic pathologist, found that the rigor mortis of Paguada's body had set in but was easily broken, thus leading him to the opinion that the victims had probably been dead for more than twelve hours. Dr. Hyma also observed an amount of gunpowder residue on Najarro's white shirt. An autopsy showed that each victim died from multiple gunshot wounds. Najarro had four gunshot wounds and Paguada nine.
The police investigation focused on Robertson because of witnesses' statements that Robertson had committed the crimes. On November 19, 1988, Detective Spear, the homicide investigator in the case, went to Robertson's home and asked him to come to the station for questioning. Before the questioning began, a detective informed Robertson of his Miranda[3] rights, and had him initial a consent form for an interview. During the questioning, Robertson claimed that he had no involvement in the murders. He stated that he, Anthony Williams, C.J. Williams, and Gerald Griffin fished and drank beer near the 36th Causeway and that he had considered robbing the people but that he had changed his mind and drove past the parked car. After this initial interview, the police attempted to verify his statements. Unable to verify his statements, the police returned to the station and asked Robertson to give a taped statement. Robertson repeated his prior statements on tape which the State admitted into evidence. Shortly after he gave his statement, the police arrested Robertson for the murders.
On November 20, 1988, Margaret Williams, the mother of Barron and Anthony Williams, gave the police officers permission to enter her home and retrieve the rifle that Barron had hidden in the closet. A firearms expert matched the .22 caliber rifle with the casings found at the murder scene and the gunpowder residue pattern found on Najarro's shirt. The expert also stated the opinion that the tread and wear of the tires on the car that Robertson was driving on the day of the murders were consistent with the photographs of the tire tracks found near the murder scene.
Following Robertson's arrest, a sales clerk for a pawn shop heard Robertson's name mentioned on the television reports of the murders. The clerk checked the pawn shop's records and found a pawn slip with Robertson's name. The pawn slip showed that on November 15, 1988, Robertson pawned seven rings for fifty dollars. The pawn slip contained Robertson's name, date of birth, race, sex, address, phone number, hair color, eye color, driver's license number, social security number, and a right thumb print. The sales clerk contacted the police, and the officers retrieved the rings and the pawn slip from the clerk. At trial, Blanca Paguada identified the rings as belonging to her sister. Further, expert testimony matched Robertson's handwriting with his signature on his driver's license, the consent form he initialed, and the pawn slip. Expert testimony also matched the thumbprint found on the pawn slip to Robertson.
The jury convicted Robertson of two counts of first-degree murder as well as armed robbery and armed burglary. The jury recommended the death penalty for *1232 Najarro's murder by a vote of eight to four and recommended the death penalty for Paguada's murder by a vote of twelve to zero. The court found the following aggravating circumstances: 1) Robertson had previously been convicted of another capital felony;[4] 2) Robertson committed the murders during the commission of an armed robbery and armed burglary;[5] 3) Robertson murdered Paguada to prevent his identification and arrest;[6] 4) Robertson murdered both Najarro and Paguada for pecuniary gain;[7] and 5) Robertson's murder of Paguada was heinous, atrocious, or cruel.[8] In mitigation, the court found the statutory mitigating circumstance of no significant history of prior criminal activity[9] and the nonstatutory circumstances of Robertson's good upbringing and remorse for the murders. The court imposed the death penalty for both murders and imposed consecutive life sentences for the armed robbery and armed burglary counts.
On appeal, Robertson raises three issues relating to the penalty phase of the trial: 1) whether the trial court erred in finding the aggravating circumstance that Robertson murdered Paguada to avoid arrest; 2) whether the trial court improperly doubled the aggravating circumstances that the murders were committed during an armed robbery and armed burglary with the pecuniary gain aggravating circumstance; and 3) whether the trial court erred in imposing life sentences for the armed robbery and armed burglary counts. Although Robertson does not raise any issues concerning the guilt phase of the trial, our review of the record shows that the jury's verdict is supported by substantial and competent evidence. Moreover, the record fails to show any reversible error; thus we affirm Robertson's convictions.
The first issue on review is whether the trial court erred in finding the aggravating circumstance that Robertson murdered Paguada to avoid arrest. The State must prove beyond a reasonable doubt that an aggravating circumstance exists. Williams v. State, 386 So.2d 538 (Fla. 1980). Moreover, even the trial court may not draw "logical inferences" to support a finding of a particular aggravating circumstance when the State has not met its burden. Clark v. State, 443 So.2d 973, 976 (Fla. 1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984). In order to support a finding that a defendant committed a murder to avoid arrest, the State must show beyond a reasonable doubt that the defendant's dominant or only motive for the murder of the victim, who is not a law enforcement officer, is the elimination of a witness. Menendez v. State, 368 So.2d 1278 (Fla. 1979). "Proof of the requisite intent to avoid arrest and detection must be very strong" to support this aggravating circumstance when the victim is not a law enforcement officer. Riley v. State, 366 So.2d 19, 22 (Fla. 1978).
The State failed to establish beyond a reasonable doubt that Robertson's dominant motive in killing Paguada was to avoid arrest. Although Robertson testified at the penalty phase of the trial that Paguada saw him clearly after he shot Najarro, he denied killing Paguada to prevent her from identifying him. As this Court stated in Hansbrough v. State, 509 So.2d 1081, 1086 (Fla. 1986), "[t]he mere fact that the victim might have been able to identify her assailant is not sufficient to support finding this factor." The facts indicate that Robertson shot Paguada instinctively and without a plan to eliminate her as a witness. The State failed to show any other facts that would establish that Robertson's dominant motive was to eliminate Paguada as a witness. See Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, *1233 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984) (holding that evidence the defendant knew the victim supported a finding that the murder was committed to avoid arrest); see also Young v. State, 579 So.2d 721, 724 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1198, 117 L.Ed.2d 438 (1992) (holding that evidence the victim tried to keep defendant from fleeing the scene of a crime and defendant killed victim in order to escape supported the finding that murder was committed to avoid arrest). Thus, the court erred in finding the aggravating circumstance that Robertson killed Paguada to avoid arrest.
The second issue that Robertson raises is whether the court improperly doubled the aggravating circumstances that the murders were committed during an armed robbery and armed burglary with the pecuniary gain aggravating circumstance. This Court has stated that it is improper to double the consideration of the aggravating circumstances of robbery and pecuniary gain when both aggravating circumstances referred "to the same aspect of the defendant's crime." Provence v. State, 337 So.2d 783, 786 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). In making this determination, the aggravating circumstances of a robbery and pecuniary gain "may not be considered individually when the only evidence that the crime was committed for pecuniary gain was the same evidence of the robbery underlying the capital crime." Oats v. State, 446 So.2d 90, 95 (Fla. 1984). This Court has upheld a finding of both aggravating circumstances of burglary and pecuniary gain where the facts showed that "the burglary had a broader purpose in the minds of the perpetrators than ... merely an opportunity for theft." Brown v. State, 473 So.2d 1260, 1267 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
The testimony in this case showed that at the onset of the crimes Robertson intended to rob the victims. Similarly, the evidence shows that Robertson killed Paguada as part of the armed robbery for pecuniary gain. Both the armed robbery and the pecuniary gain refer to the "same aspect" of the crime. As to the armed burglary, the State failed to show that Robertson had a "broader purpose" than theft in committing the armed burglary. Thus, the trial court erred by improperly doubling the aggravating circumstances of armed robbery and pecuniary gain, and armed burglary and pecuniary gain.
We also find that the trial court erred in finding the aggravating circumstance that the murder of Paguada was heinous, atrocious, or cruel. The circumstance of heinous, atrocious, or cruel is appropriately found "only in torturous murders  those that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another." Cheshire v. State, 568 So.2d 908, 912 (Fla. 1990) (citing State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)). "[A] murder by shooting, when it is ordinary in the sense that it is not set apart from the norm of premeditated murders, is as a matter of law not heinous, atrocious or cruel." Lewis v. State, 398 So.2d 432, 438 (Fla. 1981) (circumstance not proven where victim received multiple rifle and shotgun wounds); see also McKinney v. State, 579 So.2d 80 (Fla. 1991) (circumstance not shown where victim received multiple gunshot wounds and evidence did not show that the defendant intended to torture the victim); and Shere v. State, 579 So.2d 86, 96 (Fla. 1991) (circumstance not proven where multiple gunshot wounds exist). The evidence here does not establish that Robertson shot Paguada with the intention of torturing her or with the desire to inflict a high degree of pain or with the enjoyment of her suffering, thus the court erred in finding the heinous, atrocious or cruel aggravating circumstance.
The remaining valid aggravating circumstances are: 1) Robertson was previously *1234 convicted of another capital felony; and 2) the capital felony was committed while Robertson was engaged in the commission of an armed robbery and armed burglary, and committed for pecuniary gain considered as one aggravating circumstance. In mitigation, the court found the statutory mitigating circumstance that Robertson has no significant criminal history and the nonstatutory mitigating circumstances of remorse and a positive family background. Reversal of Robertson's death sentence is permitted only if this Court can find that the errors in weighing the aggravating and mitigating circumstances, if corrected, reasonably could have resulted in a lesser sentence. Rogers v. State, 511 So.2d 526, 535 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). If there is no likelihood of a different sentence, the error is harmless. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986). Under the facts of this case, we cannot reasonably determine whether the judge would have imposed the same sentence. Thus, we find the court's error in considering three invalid aggravating circumstances requires that the death sentence be reversed and the case be remanded to the trial judge for reweighing and resentencing.
As Robertson's final point on appeal, he challenges his life sentences for armed robbery and armed burglary. Robertson claims that the court erred in imposing consecutive life sentences for noncapital felonies because the court did not provide written reasons for the sentencing departure. This Court has held that it is reversible error for a court to give a departure sentence without offering contemporaneous written reasons for the departure. Ree v. State, 565 So.2d 1329, 1331 (Fla. 1990), modified by Lyles v. State, 576 So.2d 706 (Fla. 1991), receded from on other grounds by Smith v. State, 598 So.2d 1063 (Fla. 1992); see § 921.001(6), Fla. Stat. (1987) ("The sentencing guidelines shall provide that any sentences imposed outside the range recommended by the guidelines be explained in writing by the trial court judge."). Moreover, "when an appellate court reverses a departure sentence because there were no written reasons, the court must remand for resentencing with no possibility of departure from the guidelines." Pope v. State, 561 So.2d 554, 556 (Fla. 1990). In the instant case, the trial court stated:
It is further the judgment and sentence of this court that as to Counts III Robbery with a Firearm that you be adjudicated guilty and sentenced to life imprisonment with a mandatory minimum sentence of three years and as to Count IV Armed Burglary you be likewise adjudicated and sentenced to life imprisonment with a mandatory minimum sentence of three years. The death sentences are imposed consecutively, the life sentences in Counts III and IV are to be consecutive to Counts I and II and consecutive to each other.
We find that the trial court erred because it failed to provide written reasons for the departure sentences; thus the life sentences for armed robbery and armed burglary must be reversed and remanded for resentencing within the guidelines.
Accordingly, we affirm Robertson's convictions for the first-degree murder of Najarro and Paguada, but vacate his death sentences. We remand the case to the trial judge to reweigh the aggravating and mitigating circumstances and to resentence Robertson. We also affirm Robertson's convictions for armed robbery and armed burglary, but vacate his consecutive life sentences and remand to the trial judge for resentencing within the sentencing guidelines.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Although the State filed a cross-appeal, it addressed the same issues that Robertson raised in his appeal.
[2] In the indictment returned on December 7, 1988, the grand jury listed the victim's names as Frank Ernesto Najarro Rivas and Isilia Leticia Paguada Martinez. A superseding indictment returned July 19, 1989 listed the victim's names as Frank Najarro and Leticia Paguada.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] § 921.141(5)(b), Fla. Stat. (1989).
[5] § 921.141(5)(d), Fla. Stat. (1989).
[6] § 921.141(5)(e), Fla. Stat. (1989).
[7] § 921.141(5)(f), Fla. Stat. (1989).
[8] § 921.141(5)(h), Fla. Stat. (1989).
[9] § 921.141(6)(a), Fla. Stat. (1989).