703 So.2d 437 (1997)
Jose Antonio JIMENEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 85014.
Supreme Court of Florida.
October 30, 1997.
Rehearing Denied December 29, 1997.
*438 J. Rafael Rodriguez, Specially Appointed Public Defender of the Law Offices of J. Rafael Rodriguez, Miami, for Appellant.
Robert A. Butterworth, Attorney General and Fariba N. Komeily, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal the convictions of burglary with an assault and battery in an occupied dwelling and first-degree murder and the sentence of death imposed upon Jose Antonio Jimenez. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On October 2, 1992, Jimenez beat and stabbed to death sixty-three-year-old Phyllis Minas in her home. During the attack her neighbors heard her cry, "Oh God! Oh my God!" and tried to enter her apartment through the unlocked front door. Jimenez slammed the door shut, locked the locks on the door, and fled the apartment by exiting onto the bedroom balcony, crossing over to a neighbor's balcony and then dropping to the ground. Rescue workers arrived several minutes after Jimenez inflicted the wounds, and Minas was still alive. After changing his clothes and cleaning himself up, Jimenez spoke to neighbors in the hallway and asked one of them if he could use her telephone to call a cab.
Jimenez's fingerprint matched the one lifted from the interior surface of the front door to Minas's apartment, and the police arrested him three days later at his parents' home in Miami Beach. In 1994, a jury found him guilty of first-degree murder and burglary of an occupied dwelling with an assault and battery and unanimously recommended the death sentence. The court followed the jury's recommendation, finding four aggravating circumstances,[1] one statutory mitigating circumstance,[2] and two nonstatutory mitigating *439 circumstances.[3] Jimenez raises nine issues on appeal.[4]
Jimenez first argues that the trial judge improperly denied his request to discharge his court-appointed second chair counsel, Andrew Kassier, and conducted an insufficient hearing on the matter. We disagree. First, a defendant has no right to co-counsel,[5] and second, a trial court must conduct an inquiry only if a defendant questions an attorney's competence. Smith v. State, 641 So.2d 1319, 1321 (Fla.1994); Watts v. State, 593 So.2d 198, 203 (Fla.1992). Jimenez requested that the court replace Kassier because he had a conflict with him, he could not reach him, and he did not know what was going on in his case. When the court inquired as to the nature of the conflict, Jimenez and Kassier declined to explain and lead counsel, Michael Matters, indicated that further inquiry would be fruitless. Under these circumstances, wherein Jimenez had no constitutional right to co-counsel, and he did not question Kassier's competence, we find no further inquiry was warranted. We also reject Jimenez's claim that the trial court should have informed him of his right to self-representation. If the court had discharged Kassier, Jimenez still would have been represented by lead counsel, Matters. Further, a request for self-representation must be stated unequivocally. Hardwick v. State, 521 So.2d 1071, 1074 (Fla.1988). Jimenez made no unequivocal request to represent himself, thus the trial court was not obliged to inform him of his right to self-representation. See Smith, 641 So.2d at 1321.
Jimenez next asserts that, even though he was present in the courtroom, it was error for him to be absent from two sidebar conferences during the jury selection process where the parties exercised cause challenges. We disagree. In Coney v. State, 653 So.2d 1009 (Fla.1995), we required the trial court to obtain from the defendant an on-the-record personal waiver of presence from the immediate site where pretrial juror challenges were being exercised, and we stated that the ruling was prospective only.[6] In State v. Mejia, 696 So.2d 339, 340 (Fla.1997), we ruled that Coney does not apply to trials that were conducted prior to April 27, 1995.[7] Thus, we find no error.
We also find no merit to Jimenez's claim that the trial court impermissibly restricted his right to cross-examination. Trial courts have wide latitude to impose reasonable limits on the scope of cross-examination. Jones v. State, 580 So.2d 143, 145 (Fla.1991). In Penn v. State, 574 So.2d 1079 (Fla.1991), we held that *440 questions on cross examination must either relate to credibility or be germane to the matters brought out on direct examination. If the defendant seeks to elicit testimony from an adverse witness which goes beyond the scope encompassed by the testimony of the witness on direct examination, other than matters going to credibility, he must make the witness his own. Stated more succinctly, this rule posits that the defendant may not use cross-examination as a vehicle for presenting defensive evidence.
Id. at 1082 (quoting Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982) (citations omitted)).
In the instant case, defense counsel attempted to cross-examine Detectives Pearce and Ojeda concerning the search of Jimenez's apartment and the particulars of the arrest warrant. Neither subject was raised by the State in its direct examination. The trial court sustained the State's objection and ruled that the questions concerning information furnished by others which formed the basis for the arrest warrant were not only beyond the scope of direct examination, but would elicit inadmissible hearsay. The trial court further ruled that the defense could call the two witnesses during its case in chief with respect to the matters it sought to elicit on cross-examination. We find no undue restriction on the development of Jimenez's defense, and thus no error.
Next, Jimenez contends that the trial court should have sought his personal waiver of the third-degree felony murder jury instruction pursuant to Harris v. State, 438 So.2d 787 (Fla.1983), Mack v. State, 537 So.2d 109 (Fla.1989), and Green v. State, 475 So.2d 235, 236 (Fla.1985). In Harris, we held that a defendant is entitled to have the jury instructed on all necessarily included lesser offenses, and the defendant must personally waive the right to these instructions. In Green, we held that third-degree felony murder is not a necessarily included offense of first-degree murder, but it is, under certain circumstances and evidence, a proper permissive lesser included offense of first-degree murder requiring a jury instruction to that effect.
Jimenez concedes that third-degree felony murder is not a necessarily included lesser offense of first-degree murder, but claims that his waiver was required because third-degree felony murder,[8] a permissive lesser included offense, is supported by the evidence,[9] and Mack, which reaffirms the waiver requirement in Harris, does not distinguish between necessarily included and permissive lesser included offenses. We reject Jimenez's argument because our review of the record reveals that there is no evidence to support a third-degree felony murder conviction; thus, an instruction on that offense was not required.[10] We find no error.
Jimenez next claims that the evidence was insufficient to support his first-degree murder and burglary convictions. We disagree. The deliberate use of a knife to stab a victim multiple times in vital organs is evidence that can support a finding of premeditation. Preston v. State, 444 So.2d 939, 944 (Fla.1984). The record reflects that Minas was beaten and stabbed eight times. At least three stab wounds were to her chest cavity, one of which was four inches deep to her heart. This evidence supports a finding of premeditation.
Jimenez argues that the burglary was not proven because there was no proof of forced entry, or that Minas refused entry, or that she demanded that he leave the apartment. Section 810.02(1), Florida Statutes (1991), defines burglary as:
[E]ntering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
*441 Neither forced entry nor entry without consent are requisite elements of the burglary statute. We recently addressed this issue in Robertson v. State, 699 So.2d 1343 (Fla. 1997):
From our reading of the record, Robertson met his initial burden of establishing that he entered Ms. Fuce's apartment with her consent. However, on this record a rational trier of fact could have found proof of withdrawal of consent beyond a reasonable doubt. There was ample circumstantial evidence from which the jury could conclude that the victim of this brutal strangulation-suffocation murder withdrew whatever consent she may have given Robertson to be in her apartment. The jury reasonably could have concluded that Ms. Fuce withdrew consent for Robertson to remain when he bound her, blindfolded her, and stuffed her brassiere down her throat with such force that according to the medical examiner she likely would have suffocated from the gag if she had not been strangled first.
Id. (citations omitted). In the instant case, we conclude that the trier of fact could reasonably have found proof of withdrawal of consent beyond a reasonable doubt. There is ample circumstantial evidence from which the jury could conclude that Minas withdrew whatever consent she may have given for him to remain when he brutally beat her and stabbed her multiple times in her neck, abdomen, side, and through her heart. We find sufficient evidence to support the burglary conviction and first-degree murder conviction based on premeditation or felony murder.
Jimenez next asserts that the evidence was circumstantial and did not exclude a reasonable hypothesis of innocence. We disagree. Jimenez's fingerprints were found on the inside of the front door. This is consistent with the neighbors' testimony that the door was pushed shut when they tried to get in to help Minas. Further, while the neighbors were blocking the front door, Jimenez was seen jumping from the rear balcony next to Minas's, and the sliding glass doors leading to her balcony were open. Finally, Jimenez told Rochelle Baron that the police wanted to talk to him about a stabbing when the police never mentioned a stabbing. They told Jimenez they wanted to talk to him about some burglaries. We find that the evidence excludes any reasonable hypothesis of innocence.
Next, Jimenez asserts that the trial court erred by finding the HAC and "during the course of a burglary" aggravators. Because we find sufficient evidence to support the burglary conviction, we reject Jimenez's claim that there was insufficient evidence to support the "during the course of a burglary" aggravator. We also cannot agree that the HAC aggravator does not apply here. This factor applies to
torturous murdersthose that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another.
Robertson v. State, 611 So.2d 1228, 1233 (Fla.1993)(quoting Cheshire v. State, 568 So.2d 908, 912 (Fla.1990)). Upon finding the HAC aggravator, the court stated in its sentencing order:
It is certainly reasonable to infer that during this brutal and torturous attack, after being stabbed in the neck, in the side, and several times in the chest and abdomen, that Ms. Minas must have been aware of what was happening to her, and must have known she was going to die. The killing was not done quickly or painlessly. She lingered at least ten minutes while she bled to death. She suffered in pain and fear, all the while feeling helpless and alone, knowing help was outside her door, but could not get in and she could not even call out to them.
We find that the court applied the right rule of law, and competent substantial evidence supports the court's finding of both aggravators.[11]
Jimenez also argues that the trial court failed to apply sufficient weight to the "substantially impaired" mitigating circumstance. We disagree. The weight assigned to a mitigating circumstance is within the *442 trial court's discretion and subject to the abuse of discretion standard. Blanco v. State, 22 Fla. L. Weekly S575 (Fla. Sept. 18, 1997). Applying this law to the instant case, we find no error. The court found "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." § 921.141(6)(f), Fla. Stat. (1993). The court gave this mitigator minimal weight, reasoning thusly:
It is clear from the evidence that the defendant certainly appreciated the criminality of his actions. He knew right from wrong. He used sound judgment and quick thinking to cover his tracks and to avoid detection. Within a span of fifteen minutes he changed his clothes, cleaned himself up and was able to compose himself and to act completely normal while conversing with those ladies. He was no longer sweating. They did not notice anything strange about his eyes.
....
... Dr. Schwartz testified that ... the Defendant knew right from wrong, was able to conform his behavior to the requirements of the law and if the Defendant was under the influence of crack he would tend to be more daring but the crack would not affect his ability to know right from wrong or to conform his actions to the law. It was not until his lawyer advised him of the wording of this mitigator that the Doctor then modified his opinion by saying that while the Defendant could appreciate right from wrong and conform his actions to the law, his ability to do so would be "substantially impaired."
The trial court did not abuse its discretion in assigning this circumstance minimal weight, "for we cannot say that no reasonable person would give this circumstance [minimal] weight in the calculus of this crime." See Blanco, 22 Fla. L. Weekly at S576.
We find the remainder of Jimenez's issues to be unpreserved[12] or without merit,[13] and we conclude that the sentence of death is proportionate.[14] Accordingly, we affirm the convictions and sentence of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The aggravating circumstances found were: (1) the defendant was previously convicted of another capital felony or felony involving the use or threat of violence to the person; (2) the capital felony was committed while Jimenez was engaged in the commission of or an attempt to commit or in flight after committing or attempting to commit a burglary of an occupied dwelling; (3) the capital felony was committed while Jimenez was on community control; (4) the capital felony committed by Jimenez was especially heinous, atrocious, or cruel (HAC).
[2] The statutory mitigating circumstance found was: The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.
[3] The nonstatutory mitigating circumstances found were: (1) Jimenez's potential for rehabilitation; (2) Jimenez's potential sentence ("Life with a twenty-five year minimum mandatory is calculated by the Department as a ninety-nine year sentence with a release date at age eighty-one."). The court attributed very little weight to Jimenez's potential for rehabilitation while in prison, but considered his potential sentence to be a strong argument which the court gave great weight.
[4] The issues raised are whether (1) the trial court conducted an insufficient hearing and improperly denied Jimenez's request to discharge his court-appointed counsel; (2) Jimenez's absence from two sidebar conferences when cause challenges were being exercised denied him a fair trial; (3) the trial court erred by impermissibly restricting Jimenez's right to cross-examination; (4) the trial court failed to obtain Jimenez's personal waiver as to a lesser included offense instruction; (5) there was insufficient evidence to support Jimenez's convictions for first-degree murder and burglary; (6) the prosecutor's penalty phase arguments were improper; (7) the death sentence was disproportionate; (8) the trial court's sentencing order has errors that, both individually and cumulatively, require resentencing; (9) capital punishment as it is presently administered is unconstitutional.
[5] Lowe v. State, 650 So.2d 969, 974-75 (Fla. 1994)("We find that, despite the practice of appointing dual attorneys, the decision of whether to appoint co-counsel is not a right but is a privilege that is subject to the trial court's discretion.").
[6] The aforementioned rule from Coney has since been abrogated by the amendment to Florida Rule of Criminal Procedure 3.180(b), effective January 1, 1997, which clarified the presence requirement:

A defendant is present for purposes of this rule if the defendant is physically in attendance for the courtroom proceeding, and has a meaningful opportunity to be heard through counsel on the issues being discussed.
[7] Jimenez's trial was conducted October 6, 1994.
[8] See § 782.04(4), Fla. Stat. (1995) (third-degree felony-murder).
[9] Jimenez claims that the jury could have construed the underlying felony at issue to be armed trespass rather than burglary.
[10] See Green, 475 So.2d at 237 ("If there is no evidence to support a third-degree felony murder conviction, an instruction on the crime is not required.")
[11] We compliment Judge Leslie B. Rothenberg on the thoroughness of her sentencing order.
[12] Issue 6 (prosecutor's penalty phase arguments).
[13] Issue 9 (constitutionality of capital punishment).
[14] See, e.g., Johnson v. State, 660 So.2d 637 (Fla.1995)(upholding death sentence for stabbing death of elderly female inside her home during a burglary).