997 So.2d 1056 (2008)
Jose Antonio JIMENEZ, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-2373.
Supreme Court of Florida.
June 19, 2008.
As Revised on Denial of Rehearing September 29, 2008.
As Revised on Denial of Rehearing December 18, 2008.
Third Rehearing Denied January 29, 2009.
*1061 Martin J. McClain of McClain and McDermott, P.A., Wilton Manors, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Sandra S. Jaggard, Assistant *1062 Attorney General, Miami, FL, for Appellee.
PER CURIAM.
Jose Antonio Jimenez seeks review of the denial of his successive motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

FACTUAL AND PROCEDURAL HISTORY
Jimenez was convicted of both first-degree murder and burglary with an assault and battery in an occupied dwelling, and he was subsequently sentenced to death. See Jimenez v. State, 703 So.2d 437, 438 (Fla.1997).[1] On direct appeal, this Court concisely detailed the facts surrounding the incident:
On October 2, 1992, Jimenez beat and stabbed to death sixty-three-year-old Phyllis Minas in her home. During the attack her neighbors heard her cry, "Oh God! Oh my God!" and tried to enter her apartment through the unlocked front door. Jimenez slammed the door shut, locked the locks on the door, and fled the apartment by exiting onto the bedroom balcony, crossing over to a neighbor's balcony and then dropping to the ground. Rescue workers arrived several minutes after Jimenez inflicted the wounds, and Minas was still alive. After changing his clothes and cleaning himself up, Jimenez spoke to neighbors in the hallway and asked one of them if he could use her telephone to call a cab.
Jimenez's fingerprint matched the one lifted from the interior surface of the front door to Minas's apartment, and the police arrested him three days later at his parents' home in Miami Beach.
Id. at 438.
After this Court affirmed the convictions and sentence of death, Jimenez filed an original rule 3.850 motion for postconviction relief on January 31, 2000. On March 10, 2000, Jimenez filed an amended rule 3.850 motion, which contained one additional claimi.e., he was entitled to relief under Delgado v. State, 776 So.2d 233 (Fla. 2000). On June 8, 2000, the trial court summarily denied the amended rule 3.850 motion. Jimenez then filed a pro se petition for writ of habeas corpus in which he sought the appointment of new counsel. The trial court summarily denied this petition. On September 26, 2001, this Court affirmed the summary denial of the amended rule 3.850 motion. See Jimenez v. State, 810 So.2d 511 (Fla.2001). On November 13, 2001, this Court dismissed an appeal filed by Jimenez with regard to the trial court's denial of his pro se petition *1063 for writ of habeas corpus. See Jimenez v. State, 800 So.2d 614 (Fla.2001) (table). On June 12, 2002, the trial court discharged postconviction counsel Casuso and appointed new counsel McClain to represent Jimenez in any further postconviction proceedings.
On April 28, 2005, Jimenez filed a successive rule 3.851 motion. On July 25, 2005, the trial court held a Huff[2] hearing for the motion. On September 9, 2005, the trial court held a hearing to enter an order denying the rule 3.851 motion. Only the State was present at this hearing. On October 5, 2005, Jimenez moved to disqualify the trial judge, Judge Ward. On November 1, 2005, Judge Ward denied the motion for disqualification. On November 30, 2005, Jimenez filed a Notice of Appeal for the denial of the successive rule 3.851 motion. On January 5, 2006, Jimenez filed a "Petition for Extraordinary Relief, for a Writ of Prohibition, and/or for a Writ of Mandamus." This Court treated the filing as a petition for writ of mandamus and denied the petition on May 4, 2006. See Jimenez v. State, 931 So.2d 900 (Fla.2006) (table). This appeal followed.[3]

ANALYSIS

I. Summary Denial of Successive Motion for Postconviction Relief

Introduction
Jimenez asserts that the trial court erred when it summarily denied various subclaims of the successive rule 3.851 motion. In Florida, a rule 3.851 motion for postconviction relief must generally be filed within one year after the judgment and sentence are finalized. See Fla. R.Crim. P. 3.851(d)(1). If this time period expires, a motion filed thereafter is procedurally barred unless certain circumstances exist:
No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1) unless it alleges:
(A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
(B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or
(C) postconviction counsel, through neglect, failed to file the motion.
Fla. R.Crim. P. 3.851(d)(2). Additionally, a "motion filed under this rule is successive if a state court has previously ruled on a postconviction motion challenging the same judgment and sentence." Fla. R.Crim. P. 3.851(e)(2). A successive rule 3.851 motion may be summarily denied on the merits "[i]f the motion, files, and records in the case conclusively show that the *1064 movant is entitled to no relief." Fla. R.Crim. P. 3.851(f)(5)(B). When reviewing a summary denial, this Court must accept the defendant's allegations as true "to the extent they are not refuted by the record." Green v. State, 975 So.2d 1090, 1108 (Fla. 2008) (quoting Peede v. State, 748 So.2d 253, 257 (Fla.1999)).
Here, Jimenez filed the rule 3.851 motion presently under review after his previously amended rule 3.850 motion for postconviction relief had been denied. This successive rule 3.851 motion was filed on April 28, 2005, which is well beyond the one-year time period limitation after the judgment and sentence were finalizedon October 30, 1997, when this Court affirmed the convictions and sentence on direct appeal. Thus, to be reviewed on the merits, each of Jimenez's subclaims must either be based on (A) new evidence that would have been unknowable through the exercise of due diligence or (B) a fundamental constitutional right that should receive retroactive application and that was not established before October 30, 1998. See Fla. R.Crim. P. 3.851(d)(2)(A)-(B). To be considered timely filed as newly discovered evidence, the successive rule 3.851 motion was required to have been filed within one year of the date upon which the claim became discoverable through due diligence. Cf. Mills v. State, 684 So.2d 801, 804-05 (Fla.1996) (establishing such an interpretation for rule 3.850(b)(1), which has language identical to rule 3.851(d)(2)(A)).

Information With Regard To Ali
Jimenez asserts that (1) the State committed a Brady[4] violation when it failed to disclose information with regard to the cab driver Ali or, alternatively, (2) trial counsel was ineffective due to the failure to discover this information. The State allegedly failed to properly advise Jimenez that Ali had given statements to law enforcement that Jimenez was not the man that he had picked up in his cab on the day of the murder. The State also allegedly harassed Ali on multiple occasions to identify this passenger as Jimenez. Further, Jimenez asserts that this information only became available in April 2005 when postconviction counsel McClain interviewed Ali. Between October 1992 and April 2005, Jimenez alleges that Ali was unavailable because he did not respond to the multiple subpoenas that had been issued by defense counsel to interrogate him in deposition. Defense counsel wished to question Ali with regard to statements he had allegedly made to the public defender and handwritten notes of that public defender, who had been assigned as Jimenez's original trial counsel but was later replaced by new counsel.
This subclaim is procedurally barred. The record establishes that Jimenez was aware of this information as early as December 11, 2002, when he filed a petition for writ of habeas corpus with this Court. In that petition, Jimenez stated that
[a]ccording to Mr. Ali, the fare that he picked up at the apartment complex shortly after 8:00 p.m. was bleeding from the face. Mr. Ali was unable to identify Mr. Jimenez as this fare who was bleeding from his face.
(Emphasis supplied.) Whether this information was gathered from either the notes of the public defender or some other source, Jimenez was already aware of this information as early as December 11, 2002. The successive rule 3.851 motion was not filed within one year of this date; thus, this evidence is not newly discovered and does not provide a basis to review the *1065 merits of this subclaim.[5] Additionally, Jimenez has not established that a fundamental constitutional right, which provides a basis for relief under this subclaim (or any other subclaim discussed below), was formulated sometime after the convictions and sentence became final and should receive retroactive application.
Even if there were no procedural bar, the subclaim with regard to Ali would be without merit. To establish a Brady claim, the defendant must demonstrate that (1) favorable evidence, which is either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) the defendant was prejudiced because the evidence was material. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Way v. State, 760 So.2d 903, 910 (Fla. 2000). Here, the trial court correctly found that the first prong under Brady was not satisfied because this allegedly suppressed information was neither exculpatory nor impeaching. Ali would have merely testified that he picked up a person, who stated that he had been mugged and was bleeding from the face, approximately sixteen blocks from the crime scene and approximately thirty minutes after the murder of Minas. This testimony from Ali would not have logically connected the person that he picked up in his cab to the murder. Also, Jimenez has failed to allege how this testimony from Ali would impeach any of the evidence presented by the State during the trial. Thus, the record conclusively refutes this subclaim.
Additionally, Jimenez's assertion that trial counsel was ineffective due to the failure to discover this information with regard to Ali is without merit. Following the High Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Here, trial counsel was clearly not deficient for the failure to discover information that was neither exculpatory nor impeaching.

*1066 Failure to Present Brandt as a Witness

Next, Jimenez asserts that trial counsel was ineffective due to the failure to utilize Brandt as a witness during the trial. Specifically, Jimenez contends that Brandt would have testified that she saw him exit the elevator on the third floor of the apartment complex immediately prior to the other neighbors hearing the noises from Minas's unit; thus, it would have been impossible for Jimenez to commit the murder.
This subclaim is procedurally barred. Jimenez already asserted this subclaim in the amended rule 3.850 motion, and the trial court summarily denied the claim on the merits. Thus, this subclaim is based on evidence that was available when Jimenez filed the amended rule 3.850 motion.
Even without this procedural bar, this subclaim is without merit because it is conclusively refuted by the record. Notwithstanding that Detective Ojeda did state in a police report dated October 9, 1992, that Brandt had indicated that she observed Jimenez exit the elevator less than five minutes prior to the neighbors hearing the noises from Minas's unit, Brandt herself stated under oath during a later deposition (on March 23, 1993) that she saw Jimenez exit the elevator after the noises. If Brandt had been presented as a witness during the trial, she likely would have provided testimony similar to that of the sworn deposition (rather than the unsworn, double-hearsay statement that was reflected in the police report). A decision by trial counsel that the sworn testimony was more reliable than the hearsay statement was clearly reasonable. If trial counsel had called Brandt and her testimony had corresponded to her deposition, this would have completely corroborated the testimony presented by other witnesses during the trial that there was time for Jimenez to commit the murder. Thus, we conclude that trial counsel made a reasonable strategic decision not to call Brandt as a witness.

Failure to Investigate and Present Evidence That It Was Common Knowledge in the Apartment Complex That Minas Had Been Stabbed
Next, Jimenez asserts that trial counsel was ineffective due to the failure to investigate and subsequently present evidence that on the day of the murder it was common knowledge in the apartment complex that Minas had been stabbed. Jimenez contends that this would have negated one of the three factors that supported the convictions: his statement to Probation Officer Baron that intimated his knowledge that Minas had been stabbed even though the police had not disclosed that the cause of Minas's death was a stabbing.
We conclude that this subclaim is procedurally barred. During the pretrial deposition of Brandt, she stated that she was aware on the day of the murder that Minas had been "stabbed." She acquired this knowledge from another neighbor (i.e., Griminger). Thus, this subclaim is not based on newly discovered evidence, but instead, the information was available to Jimenez's postconviction counsel prior to the filing of the amended rule 3.850 motion. Further, Jimenez cannot assert in this successive rule 3.851 motion that postconviction counsel was ineffective due to the failure to assert this subclaim (or any of the other subclaims discussed below) in the amended rule 3.850 motion. See Kokal v. State, 901 So.2d 766, 777 (Fla.2005) ("We have repeatedly held that claims of ineffective assistance of postconviction counsel are not cognizable.").
Even without the procedural bar, this subclaim is without merit because it is conclusively refuted by the record. Unlike Brandt, other neighbors (e.g., Taranco) did *1067 not become aware of the cause of death until many days after the murder of Minas:
Q At that point when you say Phyllis' body, were you able to see what kind of injury she had?
A No. I only saw that there was blood on her.
Q At some point did you learn that she had been stabbed?
A When I went to do my deposition [at] the police station.
. . . .
Q Do you know what the date of the formal statement was that you gave to the police?
A October 7th, if I remember correctly.

(Emphasis supplied.) This testimony from Taranco refutes that it was common knowledge on the day of the murder (among those who lived at the apartment complex) that Minas had been stabbed. Jimenez stated to Baron on October 5 that "police wanted to talk to him about a stabbing," whereas Taranco did not become aware of the cause of death until October 7. (Emphasis supplied.) Thus, this attempt to explain Jimenez's knowledge of the stabbing was tenuous at best, and we conclude that trial counsel was not deficient for the failure to present this evidence during the trial.

Failure to Present Evidence With Regard to Baron
Jimenez also asserts that trial counsel was ineffective due to the failure to present evidence that the note in Baron's desk calendar with regard to a conversation with Jimenezi.e., the statement of Jimenez that the police wanted to talk to him concerning a "stabbing"appeared to correspond to October 9. This would contradict the claim of Baron that this conversation occurred on October 5. If the conversation instead occurred on October 9, this would support the conclusion that Jimenez could have learned of the "stabbing" from another source as more neighbors had learned of the cause of death by October 9 (e.g., Taranco learned that Minas's murder was by "stabbing" on October 7).
This subclaim is procedurally barred because it is not based on newly discovered evidence. Instead, on March 23, 1993, Baron was deposed by Jimenez's counsel, and she stated that the note in her calendar accidentally appeared to correspond with October 9, rather than the correct date of October 5. Jimenez's postconviction counsel had access to this evidence prior to filing the amended rule 3.850 motion.
Even without this procedural bar, the subclaim is without merit. In a pretrial deposition, Baron stated that her case notes accurately reflected that she had this conversation with Jimenez on October 5 at 1:30 p.m. Again, the conversation appeared to correspond to October 9 because she had just written her notes where her hand fell on the desk calendar during the conversation. Thus, trial counsel was not deficient for the failure to impeach Baron with the desk calendar because there was direct testimony which addressed why the note of the conversation appeared to correspond with October 9.

The Presence of Jimenez's Fingerprint Inside the Front Door of Victim's Unit
Next, Jimenez asserts that (1) the State committed a Brady violation when it failed to disclose information with regard to the true explanation for the presence of Jimenez's fingerprint inside the front door of Minas's unit or, alternatively, (2) trial counsel was ineffective due to the failure to discover this information. Jimenez was allegedly inside Minas's unit on multiple occasions around the time of Hurricane Andrew to assist in preparations and *1068 cleanup, which occurred before the date of the murder.
This subclaim is also procedurally barred. The presence of Jimenez inside Minas's unit on other occasions is necessarily based on his own personal knowledge of his actions. Thus, the facts on which this subclaim is predicated were known to Jimenez well in advance of the filing of the amended rule 3.850 motion. The subclaim is not based on newly discovered evidence.
Even without this procedural bar, the subclaim is without merit because it is conclusively refuted by the record. First, Jimenez's fingerprint was found on the inside of the front door. The fingerprint was located where the perpetrator would have pushed on the inside of Minas's door when the neighbors attempted to enter her unit. Second, fingerprint evidence degrades over time (the length of time for such evidence to become undetectable depends on the surface, time, temperature, and humidity). Here, the murder of Minas occurred approximately five weeks after Hurricane Andrew. Thus, it is reasonable to conclude that sufficient time had passed during the warm summer months of 1992 for any previous fingerprints left by Jimenez to degrade to the point of being undetectable. Third, this was the only fingerprint (from someone other than Minas) found in Minas's unit. When he assisted her on prior occasions, Jimenez would have touched something and left other multiple fingerprints in the unit. If these fingerprints had not yet degraded by the day of the murder, there would have been multiple fingerprints from Jimenez discovered through the investigation in Minas's unit. Thus, the fact that only one fingerprint was discovered on the front door and this fingerprint matched Jimenez further supports the conclusion that any fingerprints he allegedly left after he had previously assisted Minas had degraded and only the fresh fingerprint that he left on the day of the murder was detectable. Accordingly, there was neither a Brady violationthe information was neither exculpatory nor impeachingnor a Strickland violation trial counsel was not deficient for the failure to discover this information that was neither exculpatory nor impeaching.

Failure to Question the General Reliability of Fingerprint Evidence
Additionally, Jimenez asserts that trial counsel was ineffective due to the failure to question the general reliability of fingerprint evidence. A federal district court in Pennsylvania has issued an order in an unrelated casei.e., United States v. Llera Plaza, Nos. Cr. XX-XXX-XX, XX-XXX-XX, & XX-XXX-XX (E.D.Pa. Jan. 7, 2002) supposedly establishing a basis for trial counsel to attack the reliability of fingerprint evidence here.
This subclaim is procedurally barred. First, the fingerprint-evidence order did not establish a fundamental constitutional right that should receive retroactive application. This order was subsequently vacated by the same federal district court. See United States v. Llera Plaza, 188 F.Supp.2d 549, 576 (E.D.Pa.2002). Second, this subclaim is not based on newly discovered evidence. For the motion to be considered timely, Jimenez was required to have filed the successive rule 3.851 motion within one year of when the subclaim became discoverable through due diligence. Here, the order from the federal district court upon which Jimenez relies was dated January 7, 2002. Thus, more than one year elapsed between that date and when Jimenez filed his successive rule 3.851 motion on April 28, 2005.
Even without this procedural bar, the claim is without merit. Again, the *1069 fingerprint-evidence order that Jimenez advances was subsequently vacated by the same federal district court. We conclude that trial counsel was not deficient for the failure to pursue a theory that is based upon a now-vacated order.[6]

Influence Of Calderon
Jimenez also asserts that the State committed (1) a Brady violation when it failed to disclose information with regard to the influence of Calderon and (2) a Giglio[7] violation when it presented false evidence with regard to the influence of Calderon. Jimenez contends that he was the victim of a tainted and biased investigation orchestrated by Calderon, who was supposedly a known member of a drug cartel. Calderon allegedly wished to retaliate against Jimenez because Jimenez had an affair with his girlfriend, Debas, who was subsequently also murdered. After the Miami Beach Police Department failed to initially charge Jimenez for the death of Debas, Calderon decided to conduct his own investigation of Jimenez and employed the services of a private investigator named Sessler. When Minas was subsequently murdered in North Miami, Sessler provided the North Miami Police Department with the findings from the investigation concerning Jimenez that he had already conducted for Calderon. This allegedly caused the North Miami Police Department, which was neither neutral nor detached, to target Jimenez unfairly for the murder of Minas.
This subclaim is procedurally barred because it is not based on newly discovered evidence. Instead, it had long been common knowledge that the North Miami Police Department was given information that originated from the investigation orchestrated by Calderon. Jimenez's counsel deposed Sessler on July 11, 1996. During this deposition, Sessler acknowledged that he had been retained by Calderon for the purposes of investigating Debas's death. Additionally, Sessler stated that he had investigated whether Jimenez had been involved in the death of Debas and the file from this investigation may have been given to the North Miami Police Department. Finally, Sessler testified that he had prepared reports from this investigation and those reports had been disclosed to the State. Further, when Jimenez's trial counsel deposed Detective Diecidue on December 13, 1995, he confirmed that Sessler had provided him with information concerning Jimenez's possible involvement in the death of Debas while the investigation for the murder of Minas was ongoing. Thus, Jimenez possessed the necessary information to assert this subclaim in the amended rule 3.850 motion years ago.
Even without this procedural bar, the subclaim is without merit. First, the *1070 Brady claim is without merit because there could be no prejudice to Jimenez. Jimenez has not established a reasonable probabilityi.e., a probability sufficient to undermine confidence in the outcome that the jury would have reached an alternative verdict had the suppressed evidence been disclosed. See Strickler, 527 U.S. at 289, 119 S.Ct. 1936. If evidence of Calderon's influence had been presented during the trial, this would have opened the door to potentially damaging evidence concerning Jimenez's involvement in the death of Debas. Thus, there is not a reasonable probability that if this information with regard to the influence of Calderon had been disclosed to Jimenez, the jury would have reached an alternative verdict.
Additionally, we conclude that the Giglio claim concerning the influence of Calderon is without merit. "To establish a Giglio violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." Guzman v. State, 868 So.2d 498, 505 (Fla. 2003). Jimenez has not asserted that any false testimony with regard to the influence of Calderon was presented during the trial. Instead, Jimenez merely contends that the State colluded with Sessler in his assertion of a privilege during a deposition to prevent disclosure of the reports that he had prepared. However, this supposed false testimony was not presented during the trial, so it cannot form the basis for a Giglio claim.

Officer Cardona
Additionally, Jimenez asserts that (1) counsel was ineffective due to the failure to present Officer Cardona as a witness during the trial and (2) the State presented false evidence that Officer Cardona had identified Jimenez as a known burglar in violation of Giglio. Trial counsel failed to call Officer Cardona, who allegedly would have restated the following testimony that she had previously given during a deposition: (1) she did not recognize Jimenez on the night of the murder as a known burglar and did not make such a statement to other police officers; (2) a white van was parked adjacent to the apartment building when she arrived at the crime scene on the night of the murder; (3) Merriweather, who was a janitor for the apartment complex, failed to notify her that Jimenez was the man that he allegedly saw descend from the second-floor balcony despite the fact that Jimenez, Merriweather, and she were all in the same vicinity at the apartment complex after she finished interviewing the occupants of the white van; and (4) the clothing worn by Jimenez when she observed him at the apartment complex immediately after the murder of Minas was different than the clothing described by the other witnesses. This testimony allegedly would have supported the deposition testimony of Officer Corland that Merriweather stated to him that, at approximately 8:15 p.m. on the night of the murder, he had observed a male drop from a second-floor balcony at the apartment complex onto a van and subsequently onto the ground.
This subclaim is procedurally barred because it is based entirely upon the pretrial deposition of Officer Cardona, not newly discovered evidence. Therefore, Jimenez could have asserted this subclaim during the amended rule 3.850 proceeding.
Even without this procedural bar, the subclaim is without merit. Trial counsel was not deficient for the failure to present Officer Cardona as a witness. First, Officer Cardona would have merely testified that there was a white van in the parking lot when she arrived at approximately 8:27 p.m. The record conclusively establishes that she would not have been *1071 able to provide any testimony with regard to whether the van was present when the male dropped from the second-floor balcony. This was the crucial time, rather than when the police arrived, to possibly impeach Merriweather's testimony during the trial that no van was present to aid the male when he dropped from the second-floor balcony. Moreover, during the trial, both Officer Sidd and Officer Corland testified that the van was there when the police arrived. Thus, the testimony of Officer Cardona with regard to the white van would have been merely cumulative, and trial counsel was not deficient for the failure to present cumulative evidence.
Second, trial counsel was not deficient for the failure to present the testimony of Officer Cardona that she did not recognize Jimenez on the night of the murder as a known burglar and that she never made such a statement to other officers. Jimenez asserts that this would establish that police fabricated this statement from Officer Cardona to conceal the fact that it was the influence of Calderon which led to the investigation being focused on Jimenez for the murder of Minas. However, presentation of this testimony would have opened the door to evidence with regard to Jimenez's involvement in the death of Debas. Thus, trial counsel was not ineffective for the failure to offer this testimony.
Third, trial counsel was not ineffective for the failure to present the testimony of Officer Cardona that Merriweather failed to notify her that Jimenez was the man that he allegedly saw descend from the second-floor balcony. This testimony from Officer Cardona would not have impeached Merriweather. During the trial, Merriweather acknowledged that he saw a uniformed officer walk past him at the apartment complex after the murder but he did not speak to any uniformed officer at that time. Thus, counsel was not deficient for the failure to present this cumulative evidence from Officer Cardona.
Jimenez also asserts that the State committed a Giglio violation when evidence was presented that Officer Cardona knew Jimenez as a burglar. Even without the previously discussed procedural bar, this alleged Giglio violation is without merit. Here, the record conclusively refutes that there was any testimony presented during the trial that Officer Cardona knew Jimenez as a burglar. Thus, the first prong of Giglio is not met because the State did not present false testimony on this matter.

Failure to Disclose Manipulations With Regard to the Jailhouse Informant Jeffrey Allen
Jimenez asserts that the State committed a Brady violation through the failure to disclose the manipulations of the jailhouse informant Jeffrey Allen. The State allegedly planted Allen in the jail to acquire evidence and implicate Jimenez in the murder of Minas. Additionally, Jimenez alleges that despite the fact that the State knew that Allen could not be used as a witness during the trial, the State utilized Allen before the trial to force the public defender's office to withdraw from representing Jimenez due to a conflict of interest (Allen was also previously represented by the public defender's office in an unrelated case).
This subclaim is procedurally barred. There is no new evidence that was unavailable to Jimenez when he filed the amended rule 3.850 motion. Instead, when Jimenez's trial counsel deposed Detective Diecidue on December 13, 1995, he stated that Allen had provided him with the confession of Jimenez that he had murdered two females which matched the description of the Minas and Debas murders.
Even without this procedural bar, this subclaim is without merit. The fact *1072 that the public defender's office was forced to withdraw from representing Jimenez is irrelevant with regard to this Brady claim. While Jimenez had a constitutional right to counsel during the trial, he did not have the right to representation from a particular attorney. Thus, Jimenez has not established a basis for relief.

Cumulative Analysis
Jimenez also asserts that the trial court erroneously addressed each subclaim separately. He contends that the subclaims should have been considered cumulatively to determine whether relief was warranted. We have reviewed each of the subclaims asserted by Jimenez and conclude that he is also not entitled to relief under a cumulative analysis.

II. Claim of Factual Innocence
Additionally, Jimenez asserts that he is factually innocent; thus, the convictions and death sentence violate due process. We conclude that this factual-innocence claim is unpreserved because Jimenez did not present this specific claim to the trial court during the successive rule 3.851 proceeding. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982) ("[F]or an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below." (emphasis supplied)).
Even if this claim had been properly presented to the trial court, it would be without merit. On direct appeal, this Court concluded that the evidence did not support the claim that Jimenez was innocent:
Jimenez next asserts that the evidence was circumstantial and did not exclude a reasonable hypothesis of innocence. We disagree. Jimenez's fingerprints were found on the inside of the front door. This is consistent with the neighbors' testimony that the door was pushed shut when they tried to get in to help Minas. Further, while the neighbors were blocking the front door, Jimenez was seen jumping from the rear balcony next to Minas's, and the sliding glass doors leading to her balcony were open. Finally, Jimenez told ... Baron that the police wanted to talk to him about a stabbing when the police never mentioned a stabbing. They told Jimenez they wanted to talk to him about some burglaries. We find that the evidence excludes any reasonable hypothesis of innocence.

Jimenez, 703 So.2d at 441 (emphasis supplied). We similarly conclude that the evidence currently before us does not support the claim that Jimenez is innocent.

III. Alleged Failures of Defense Counsel and the State
Jimenez also asserts that his rights to both due process and a fair trial were violated due to multiple failures of trial counsel and the State and due to the fact that these failures involve newly discovered evidence of innocence that undermines confidence in the convictions. We disagree. As discussed above, the trial court properly denied this same claim which was asserted in Jimenez's successive rule 3.851 motion. Specifically, Jimenez was not entitled to an evidentiary hearing because all the subclaims asserted in the successive rule 3.851 motion were conclusively refuted by the record.

IV. Motion to Disqualify
Finally, Jimenez asserts that Judge Ward erroneously denied the motion to disqualify after she had allegedly engaged in an improper ex parte communication with the State. We disagree. The motion to disqualify was not legally sufficient because the ex parte communication with Judge Ward was not improper. See Fla. R. Jud. Admin. 2.330(d)(1) (establishing *1073 that a motion to disqualify is legally sufficient if the facts alleged, which are assumed to be true, would cause the movant to have a well-founded fear that he or she will not receive a fair trial from that judge). On September 9, 2005, Judge Ward engaged in a communication with the State. However, the record establishes that Judge Ward engaged in this communication for a strictly administrative reasoni.e., the purpose was to enter the order denying the successive rule 3.851 motion in open court. Contrary to Jimenez's assertion, the fact that the State informed Judge Ward that no evidentiary hearing occurred for this successive rule 3.851 motion does not constitute a substantive discussion concerning the merits of the case. Thus, the alleged ex parte communication was not improper, and the trial court did not erroneously deny the motion to disqualify.

CONCLUSION
For the foregoing reasons, we affirm the trial court's denial of Jimenez's successive rule 3.851 motion for postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] After the jury unanimously recommended that Jimenez be sentenced to death, the trial court followed this recommendation and imposed a death sentence. See Jimenez v. State, 703 So.2d 437, 438-39 (Fla.1997). The trial court found four aggravating circumstances: (1) "[Jimenez] was previously convicted of another capital felony or felony involving the use or threat of violence to the person; (2) the capital felony was committed while Jimenez was engaged in the commission of or an attempt to commit or in flight after committing or attempting to commit a burglary of an occupied dwelling; (3) the capital felony was committed while Jimenez was on community control; (4) the capital felony committed by Jimenez was especially heinous, atrocious, or cruel (HAC)." Id. at 439 n. 1. The trial court found one statutory mitigating circumstance: "The capacity of [Jimenez] to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." Id. at 439 n. 2. The trial court further found two nonstatutory mitigating circumstances: (1) Jimenez's potential for rehabilitation (assigned very little weight); and (2) Jimenez's potential sentence of imprisonmentas an alternative to the death sentencewhich would result in confinement until age eighty-one (great weight). See id. at 439 n. 3.
[2] Huff v. State, 622 So.2d 982 (Fla. 1993).
[3] Jimenez has also filed multiple habeas petitions with both this Court and the federal courts and multiple certiorari petitions with the United States Supreme Court, but all these petitions were denied. See Jimenez v. Fla. Dep't of Corrs., 481 F.3d 1337 (11th Cir. 2007) (denying the certificate of appealability to appeal the federal district court's denial of the habeas petition); Jimenez v. Crosby, 905 So.2d 125 (Fla.2005) (table) (denying successive habeas petition); Jimenez v. Crosby, 861 So.2d 429 (Fla.2003) (table) (denying habeas petition that also sought to invoke "All Writs Jurisdiction"); Jimenez v. Florida, 535 U.S. 1064, 122 S.Ct. 1932, 152 L.Ed.2d 838 (2002) (denying certiorari petition concerning the affirmance of the denial of the amended rule 3.850 motion); Jimenez v. Florida, 523 U.S. 1123, 118 S.Ct. 1806, 140 L.Ed.2d 945 (1998) (denying certiorari petition concerning the convictions and death sentence).
[4] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[5] Jimenez asserts that the diligence of postconviction counsel was adversely affected by the lack of adequate funding. We disagree. As discussed in this opinion, all of Jimenez's various subclaims are procedurally barred because either he or postconviction counsel was already sufficiently aware of all relevant information to be able to include the subclaims in either the amended rule 3.850 motion or a successive rule 3.851 motion that should have been filed no later than December 2003. Instead, the successive rule 3.851 motion was not filed until April 2005, which is well beyond the one-year time constraint. See Fla. R.Crim. P. 3.851(d)(1). Thus, we conclude that the trial court properly denied the assertion that Jimenez was not provided with the resources to investigate possible sources of error. See Remeta v. State, 710 So.2d 543, 546 (Fla. 1998) (denying claim that defendant's right to effective representation was violated due to the lack of funding available for postconviction counsel where defendant failed to establish that the relevant information could not have been ascertained through due diligence within the time constraints for postconviction relief).
[6] It should be noted that Jimenez also asserts that trial counsel was ineffective due to the failure to investigate and present evidence with regard to the "shoddy" investigation techniques utilized by the North Miami Police Department in the instant case. Specifically, Jimenez asserts that, despite the fact that the latent fingerprint on the front door was identified during the early morning hours of October 3, 1992, police did not attempt to arrest him until October 5, 1992. This allegedly establishes that the police engaged in "shoddy" investigative practices.

This subclaim is procedurally barred. Jimenez does not allege that this subclaim is based upon newly discovered evidence. Instead, this subclaim could have been pursued through the amended rule 3.850 motion.
Even without this procedural bar, we conclude that the subclaim is without merit. The fact that the police arrested Jimenez approximately two days after the fingerprint was identified does not establish that the investigation was "shoddy."
[7] Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).